AT

## DES MOINES, MARCH TERM, A. D. 1887,

IN THE FORTY-FIRST YEAR OF THE STATE.

PRESENT:

Hon. AUSTIN ADAMS, Chief Justice.
" WILLIAM H. SEEVERS,
" JOSEPH R. REED,
" JAMES H. ROTHROCK, } Judges.
" JOSEPH M. BECK.

KUHNS, ADM'R, v. THE WISCONSIN, IOWA & NEBRASKA RAIL-
WAY COMPANY.

| 70 | 561 |
|----|-----|
| 96 | 705 |
| 70 | 561 |
| 107 | 257 |
| 70 | 561 |
| 126 | 218 |
| 70 | 561 |
| 129 | 450 |
| 70 | 561 |
| 131 | 24 |
| 70 | 561 |
| 134 | 427 |

1. **Railroads:** INJURY TO FIREMAN: DEFECTIVE TRACK: IMMATERIAL
EVIDENCE. In an action to recover for the death of a fireman, caused by
the tender's leaving the track at a certain place, it was immaterial
whether the rails were properly spiked at other places, or at that place,
unless the failure so to spike them caused or contributed to the accident.
(*Ruggles v. Town of Nevada*, 63 Iowa, 185, followed in principle.)

2. ———: ———: IMMATERIAL EVIDENCE. In such case, evidence that
the train was run at a dangerous rate of speed was improperly admit-
ted, where negligence of that kind was not pleaded.

3. ———: ———: DEFECTIVE TRACK: EXPERT EVIDENCE. In such case, where the train was running backward at the time of the accident, and there was evidence that the track was in the same condition at that time as when it was seen by an expert witness, *held* that it was proper for the expert to state whether, if the track was in the same condition, it would be more dangerous to run the train backward than forward.

4. ———: ———: ———: ———. In such case, a question put to an expert as follows:—" Suppose the fact to be that it [the track] was so badly out of line that it was plainly visible to the eye, what do you say then as to whether the danger would be increased by running the engine backward over the track at a high rate of speed,''—should have been excluded, because (1) there was no issue as to an improper rate of speed, and (2) the hypothesis was too indefinite, since slight as well as serious defects may be plainly visible.

5. ———: ———: NEGLIGENCE: INFERENCE FROM UNUSUAL ACCIDENT. In such case, the fact that the accident was unusual and extraordinary did not tend to prove negligence on the part of the railroad company. (*Tuttle v. Chicago, R. I. & P. R'y Co.*, 48 Iowa, 236, in which the plaintiff was a passenger, and not an employe, distinguished.)

6. ———: ———: CONTRACTING FOR DANGEROUS EMPLOYMENT. Where one applied for and was employed to perform the duties of a fireman on a particular run, and had knowledge that, for the want of a turn-table, the engine was run backward three times every day, *held* that he assumed the risk attendant upon the running of the train backward, and that he could not recover for an injury received on account of running the train in that way. (*Mayes v. Chicago, R. I. & P. R'y Co.*, 63 Iowa, 502, distinguished.)

*Appeal from Black Hawk Circuit Court.*

TUESDAY, MARCH 1.

THE plaintiff's intestate was in the employ of the defendant, as plaintiff claims, as a fireman on a locomotive, and he was killed in an accident which occurred on the railway in October, 1884. Trial by jury. Judgment for the plaintiff, and the defendant appeals.

*Hubbard, Clark & Dawley*, for appellant.

*Horace Boies* and *Jas. Husted*, for appellee.

SEEVERS, J.—A recovery is asked in the petition on the ground of the negligence of the defendant. The negligence,

Kuhns, Adm'r, v. The Wisconsin, Iowa & Nebraska Railway Company.

as stated in the petition, is (1) that the track was not properly ballasted; (2) that the rails were not properly spiked to the ties; (3) that the track was rough and uneven; (4) that defendant failed to furnish a suitable engineer; (5) that defendant failed to furnish appliances for turning the engine; and (6) that it was running backward; and by reason of the circumstances above stated the engine was thrown from the track, whereby the deceased was injured, and subsequently died. The material facts are that the train consisted of the engine, tender, way car and a passenger coach, and was making the trip from Waterloo to Hudson, a distance of nine miles. The tender was in front of the engine, which was running backward. One of the flanges of one of the wheels of the tender broke, the tender and engine left the track, and ran over the ties for the distance of about 120 feet, when the engine fell down an embankment on one side, and the tender on the other, and thereby the deceased was injured. The way car remained on the track. The place where the tender left the track was definitely located by marks on the top of the rail. At that point the track did not spread, and remained in the same condition it was in before the accident. The track was straight. The foregoing are conceded facts. There was evidence tending to show that the track was uneven and out of line, the road not properly ballasted, and the rails not sufficiently spiked; but the extent of these deficiencies, and their effect in causing the accident, was controverted. That the road was new, and had been only recently constructed, was a conceded fact.

I. The deceased was an employe, and therefore the fact that there was an accident and he was injured is not sufficient to enable the plaintiff to recover, or cast the burden on the defendant to show that there was negligence. The plaintiff therefore properly assumed the burden of establishing negligence on the part of the defendant, and he introduced evidence tending to show that the track was not properly spiked; how

1. RAILROADS: injury to fireman: defective track: immaterial evidence.

other roads were usually spiked; and that five consecutive
ties, about 100 feet from the place where the tender left the
track, had not been spiked.   The object in spiking the track
we understand to be to prevent it from spreading, and to
keep the rails in place and line.   The spikes are so driven
into the ties as to effect this object.   The defendant objected
to the evidence, but the objection was overruled.   We think
it should have been sustained, for the reason that the failure
to spike could not have contributed to the accident.   This is
apparent because of the fact that the track did not spread at
the place where the tender left the track.   It is immaterial
whether it was spiked at other places or not, or at that place,
unless such failure caused or contributed to the accident.
*Ruggles v. Town of Nevada*, 63 Iowa, 185.

II.   Evidence was introduced by the plaintiff which had
a possible tendency to show that the train was running at a

2. —— : ——: dangerous rate of speed.   An objection to this
immaterial
evidence.      evidence was overruled.   It should have been
sustained, because there was no such issue.   No such ground
of negligence is stated in the petition.

III.   The defendant introduced evidence tending to show
that the track at the time of the trial was in the same condition

3. —— : ——: it was in at the time of the accident, and asked
defective
track: expert  an expert, when on the stand as a witness, who
evidence.      had seen the track just preceding the trial, in
substance, if the track was in the same condition at the time
of the accident as when he saw it, whether it would be more
dangerous to run the engine and tender backward than for-
ward.   An objection to this question was sustained, and in
so ruling the court erred.   If the track was in the same con-
dition at both times, it seems to us there can be no doubt
that the ruling was erroneous.   Whether it was in that con-
dition was for the jury to say.

IV.   The plaintiff asked an expert the following question:
" Suppose the fact to be that it [the track] was so badly out

4. of line that it was plainly visible to the eye in looking along the track, what do you say then as to whether the danger would be increased by running the engine backward over the track at a high rate of speed?" To this and similar questions the defendant objected, but the objections were overruled. We think they should have been sustained, for the reason that, as we have just stated, there was no issue as to the speed of the train. Then, again, the question is indefinite as to the condition of the track. A defect which could be seen is surely an unsafe basis upon which to found a hypothetical question. The extent of the visible defect should have been stated. If this had been done, the expert might not have regarded it as a defect at all. Both serious and slight defects may be seen.

V. There was some evidence tending to show that there was a slight crack in the flange which broke, and therefore we do not think the court erred in instructing the jury that " if the train left the track by reason of the breaking of the flange of the wheel, unless such breaking was caused solely by the bad repair of the track," defendant would not be liable.

The defendant asked the court to instruct the jury as follows: " Should you find from the testimony that the track was in a reasonably safe condition to operate the train upon at a rate of from fifteen to twenty miles an hour, and that the track did not spread at the place where the trucks left the track, then you may fairlyinfer that the accident was not caused by reason of the want of spikes, nor by reason of the want of ballast." It follows from what we have heretofore said that this instruction should have been given.

VI. The court instructed the jury as follows: " But if you are satisfied from the evidence that the accident in question by which plaintiff's decedent lost his life was unusual and extraordinary, and one that in the ordinary use of railways would not happen, it is your privilege to consider the fact of such accident as one of

5. negligence : inference from unusual accident.

the circumstances from which you are to determine whether or not the road bed or engine was in fact in reasonably good order and condition." It is claimed that this instruction is in accord with *Tuttle v. Chicago, R. I. & P. R'y Co.*, 48 Iowa, 236. But in that case the plaintiff was a passenger, and in such case the rule is that the accident, when established, casts on the defendant the burden of showing that there was no negligence on its part which contributed to the accident. In this case the rule is different, and the fact that there has been an accident, whether ordinary or extraordinary, has no tendency to prove negligence. If that were the rule, then all the plaintiff had to do was to prove the accident, and he would be entitled to recover unless the defendant assumed the burden of proving that it was not negligent; and this it was not bound to do. If the accident can be regarded as a circumstance tending to show negligence, then the burden may be shifted in all cases, and the jury might regard it as sufficient to entitle the plaintiff to recover. *Case v. Chicago, R. I. & P. R'y Co.*, 64 Iowa, 762.

VII. The defendant introduced evidence showing that the deceased applied for and was hired to perform the duties of fireman on the run from Waterloo to Hudson, and that he was so employed at the time of the accident, the run being the same as he applied for. The evidence further shows that the road was not fully completed, and that there was no turn-table or other means of turning the engine at Hudson; so that, if the road was operated at all, the engine had to be run backward either going to or from Hudson. The foregoing evidence was in no respect controverted. This being so, counsel for the appellant insist, that, as the deceased applied for and was employed to perform the duties of fireman on a particular run, and had knowledge that the engine was three times every day run backward between Hudson and Waterloo, the plaintiff cannot recover because the train was so run backward. To this counsel for the appellee reply that the act of

6. —— : ——:
contracting for dangerous employment.

the deceased simply amounted to a waiver, and that a waiver must be pleaded; and *Mayes v. Chicago, R. I. & P. R'y Co.*, 63 Iowa, 562, is relied on. In that case it does not appear that the deceased was employed to perform any particular service. He was simply performing the duties as a night switchman in the yards at Council Bluffs. The 'track was in a defective condition, and he was presumed to have so known; and it was held that, by remaining in the employment of the defendant, this amounted to a waiver, which must be pleaded by the defendant. The case at bar is different. The deceased was employed to perform a particular thing, as to the dangers of which he must be presumed to have had full knowledge; that is, he knew the engine was run backward. He continued to perform the duties of fireman for about two months prior to the accident. Having engaged to do that particular duty in a particular manner, the plaintiff cannot justly complain that the thing the deceased undertook to do was dangerous; that is, that it was dangerous to run the engine backward, and because it was so run the accident occurred.

VIII. Counsel for the defendant contend that the defendant is not liable because it was not operating the road at the time the accident occurred. This question has been argued at length, both in print and at bar, and we regret to say that we are not agreed in relation thereto; and, as the case must be reversed on other grounds, we think our proper course is to express no opinion as to the question above stated.

It is possible we have not alluded to all the errors discussed by counsel, but we think we have, as to those which seem to us to be the most important.

REVERSED.