## ACME CEMENT PLASTER COMPANY v. WEST-MAN.

## (No. 687.)

MASTER AND SERVANT—INJURY TO SERVANT—SUFFICIENCY OF PETITION—DUTY OF MASTER—NEGLIGENCE—TRIAL—INSTRUCTIONS—ASSUMING FACTS—PRESUMPTION AND BURDEN OF PROOF—ERRONEOUS INSTRUCTIONS, WHEN PREJUDICIAL—EVIDENCE—HEARSAY—EXPERT EVIDENCE—STATEMENTS MADE TO PHYSICIAN.

1. In an action for personal injuries by one employed in defendant's mill, the petition alleged that through defendant's carelessness and negligence, plaintiff was injured by the falling of a coal bin which burst or collapsed because built by defendant in an insufficient, defective and insecure manner, in that the upright posts supporting it were not fastened or secured by nails, screws, bolts, or in any manner, and were unable to withstand the pressure of the weight of the coal in the bin. *Held,* that, liberally construed, the petition charged negligent construction of the bin in that the posts supporting it were not sufficiently secured to withstand the pressure of the coal against them; and it appearing by the evidence that the posts were not fastened or secured by nails, screws or bolts, but were held in place by the weight resting upon them from above which had been sufficient for that purpose from the time the building was built several years before the accident, the question whether or not such construction was negligent was an important issue to be submitted to the jury under proper instructions.

2. An employer is not required to furnish an absolutely safe place for the employe to work in, but a place that is reasonably safe, and in constructing the coal bin in question in this case it was not the duty of the defendant to secure the supporting posts in any particular manner, but to exercise such care in the construction of the bin, and such diligence in maintaining it, as to afford a reasonably safe place for the purpose for which it was used.

3. In an action for injuries to an employe caused by the falling of a post supporting a coal bin, an instruction that, if the employer knew or had reason to know the peril or danger to which the plaintiff would be exposed, and the defects in the construction of the bin complained of, and if other specified facts should be found, the defendant was liable, was misleading and erroneous, since it assumed that plaintiff was

and would be exposed to perils and dangers and that the defects complained of existed, and tended to lead the jury to conclude that a failure to secure the supporting post in a manner different from that in which it had been held in place was negligence, there being no other instruction that if the post was otherwise sufficiently secured to make the place reasonably safe a failure to fasten it in a particular manner would not constitute negligence.

4. The burden rested on the plaintiff to prove not only that the bin fell and injured him but also that it fell by reason of some defect alleged in his petition.

5. Where a post supporting a coal bin of an employer had been used for several years since its construction without accident, and there was evidence from which the jury might have found that its fall was due to the negligence of an independent contractor in filling the bin with coal, there was no presumption that its fall was due to the negligence of the employer, and an employe suing for injuries caused by its fall had the burden of proving negligence, wherefore an instruction that the fall created a presumption of negligence was error.

6. While inconsistent instructions will not be held to be prejudicial where the appellate court can see from the evidence and the verdict that the jury must have followed the correct one, the rule is otherwise where it appears that the jury may have, or probably did, follow the erroneous one.

7. It is not competent for a witness to testify to the earnings of an employe suing for injuries by referring to the employer's pay rolls where the witness did not prepare the rolls, and, aside from such pay rolls has no knowledge of the earnings of the employe.

8. In an action for personal injuries, a physician may testify to a statement or narration given by an injured person in relation to his condition, symptoms and sensations, both past and present, when such statements were received during and were necessary to an examination with a view to treatment, or when they are necessary to enable him to give his opinion as an expert witness, such evidence being admissible for the purpose of affording the jury means of determining the weight to be given the opinion of the physician, but not as evidence tending to prove actual condition of the injured person at the time of which he spoke, and the jury should be so cautioned.

[Decided March 26, 1912.]                    (122 Pac. 89.)

ERROR to the District Court, Albany County; HON. CHARLES E. CARPENTER, Judge.

The action was by Carl Westman against the Acme Cement Plaster Company for damages for injuries received by the plaintiff while employed as a fireman in the defendant's mill. The material facts are stated in the opinion. Judgment was rendered for the plaintiff, and defendant prosecuted error.

*Nellis E. Corthell, C. P. Arnold, Herbert V. Lacey* and *John W. Lacey*, for plaintiff in error.

The several motions to make the petition more definite and certain should have been sustained. It was indefinite and uncertain with reference to the results of the injury complained of which, as appeared by the petition itself, would require the production of expert evidence. Without a more definite statement of such results the defense could not properly be prepared. There is a general averment that the coal bin, the falling of which is alleged to have caused the injuries complained of, was defectively constructed and maintained, but that is restricted by other averments as to the particulars wherein the defects are supposed to have existed. Thus the general allegation is eliminated and the negligence is restricted to the particular defects alleged, viz: that the upright posts supporting the bin were not fastened and were not able to withstand the lateral pressure. It is not alleged that such defective construction was the result of the negligence of defendant. There is an introductory averment that the injuries complained of occurred through the gross wilfulness and wanton carelessness and negligence of the defendant, but, in the form stated, that is not an averment of any negligent act. The petition upon which the cause was tried is therefore insufficient, and the request for a peremptory instruction in favor of defendant should have been granted. The evidence failed to establish negligence.

The court improperly permitted a physician to narrate certain matters which plaintiff had told him concerning his feelings of the past. They were things which the witness.

could not and did not know. The objection to the evidence should have beeen sustained. (Atlanta St. R. Co. v. Walker, (Ga.) 21 S. E. 48; Kelley v. R. Co., 80 Mich. 237.) It is not permissible for witnesses to testify to complaints or statements of physical condition or feelings made by an injured person in answer to a question, or which are narrative in their nature, and which are not a part of the *res gestae*. (Keller v. Town of Gilman, (Wis.) 66 N. W. 800; Bacon v. Charlton, 7 Cush. 581.)

It was error to permit the witness Henderson to read into the record certain matters from the pay-roll of the rolling mill, the original roll not being in the custody of the witness, but out of the state, and there being no testimony as to who kept the books or made the records, or that they were correctly kept, or that the witness had any knowledge of the transactions therein mentioned. (Butler v. Estrella Raisin Co., (Cal.) 56 Pac. 1040; Swan v. Thurman, (Mich.) 70 N. W. 1023; Carlton v. Carey, (Minn.) 86 N. W. 85; Kent v. Garvin, 1 Gray, 148; Chaffee & Co. v. U. S., 85 U. S. 516; Martin v. R. R. Co., 1 Wyo. 143; Hay v. Peterson, 6 Wyo. 419.) The error was particularly harmful and prejudicial because there was no other evidence upon which to base any computations as to the loss in wages sustained by the plaintiff below through his injuries.

The court gave an instruction which in fact stated and made applicable to the case the rule of *res ipsa loquitur*. That rule is inapplicable in a case like this, where the action is by one against his employer, and where the evidence showed a possible other cause for the falling of the structure, and does not disclose with certainty the exact cause of the falling. (Spees v. Boggs, (Pa.) 47 Atl. 875; Price v. Lehigh &c. R. Co. (Pa.) 51 Atl. 756; Kuhns v. Ry. Co., (Ia.) 31 N. W. 868; Ry. Co. v. Cook, (Ky.) 73 S. W. 765; Hofnauer v. White Co., (Mass.) 70 N. E. 1038; McGrath v. Transit Co., (Mo.) 94 S. W. 872.) Another instruction —No. 11—informed the jury that the only things necessary to the liability of the defendant were: First, That the plain-

tiff in error knew the dangers to which the defendant in error would be exposed while in his employment. Second, That the defendant knew the upright post was not fastened or secured by nails, screws, bolts, or in any manner whatsoever. Third, That defendant did not make known to the plaintiff his danger. Fourth, That the plaintiff received the injuries. Fifth, That the plaintiff was exercising ordinary care and was without fault at the time of the injuries. That instruction is erroneous. It assumes that there was danger to the plaintiff in his employment; that the failure to secure the upright post by nails, screws or bolts constituted a defect; that the defect was of such a character as constituted, if known to the company, negligence on its part; that the injuries were caused by that particular defect; that the accident was caused by negligence either of the defendant below or of the plaintiff, and not by a fellow servant or an independent contractor. The question whether or not there were defects was not submitted to the jury, nor were the jury permitted by the instruction to say whether the failure to secure the posts in the manner mentioned was a defect or otherwise, or that such defect was of such a character as constituted negligence on the part of the defendant. None of the matters assumed by the instruction were submitted to the jury. Other instructions are also erroneous because assuming a large part or the entire case of the plaintiff, and leaving to the jury only the question as to the plaintiff's knowledge of the supposed defect. (1 Sackett on Instructions, (3rd Ed.) page 148, sec. 163; 2 Thompson on Trials, page 1638; Ry. Co. v. Price, 97 Fed. 423; Wilson v. Fuller, 9 Kan. 121; Ranney v. Barlow, 112 U. S. 207; Henderson County v. Dixon, (Ky.) 63 S. W. 756; Ry. Co. v. White, (Tex.) 32 S. W. 322; Van Natta v. People's St. Ry. Co., (Mo.) 34 S. W. 505; So. Pine Co., v. Powell, (Fla.) 37 So. 570; Judd v. Gray. (Ind.) 59 N. E. 849; Sandy Lake v. Forker, (Pa.) 18 Atl. 609; Kennedy v. Rosier, (Ia.) 33 N. W. 226; R. Co. v. Dorsett, (Kan.) 50 Pac. 64; Ry. Co. v. Olesen, (Neb.) 59 N. W. 354; Loche v. Waldron, 77

N. Y. Supp. 405; Jones v. Ry. Co., (S. C.) 39 S. E. 758; China v. Sumter, (S. C.) 29 S. E. 206; Monsen v. Crane, (Minn.) 108 N. W. 933; Stringham v. Stewart, (N. Y.) 18 N. E. 870; Car Works v. Schaefer, (Md.) 53 Atl. 665; Sappenfield v. R. Co., (Cal.) 27 Pac. 590.) The errors pointed out in the instructions referred to were not attempted to be cured by any other instructions, nor could a correct charge have cured and destroyed the effect of the incorrect statement in these instructions. "A specific charge, based on particular facts, which, if followed by the jury, causes an erroneous verdict, is not cured by correct general charges applicable to cases of this class as well as the case at bar." (Ry. Co. v. Krouse, 30 O. St. 222.) "It is only when the fact so clearly appears as to be beyond doubt that an error challenged did not prejudice, and could not have prejudiced the complaining party, that the rule that error without prejudice is no ground for reversal is applicable. * * * And the vice of a wrong rule in a charge of the court is not extracted by the fact that the right rule was also given therein, because it is impossible to tell by which rule the jury was governed." (Armour & Co. v. Russell, 144 Fed. 614; Fogarty v. So. Pac. Co., (Cal.) 91 Pac. 650; Swiercz v. Ill. Steel Co., (Ill.) 83 N. E. 168.)

*F. E. Anderson* and *H. V. S. Groesbeck*, for defendant in error.

The case was tried upon the second amended petition to which no demurrer or motion was interposed, and therefore all objections to the original or to the first amended petition are eliminated. (Cone v. Ivinson, 4 Wyo. 203.) Contributory negligence is an affirmative defense to be pleaded with particularity, and the court properly sustained the motion to make the allegation of the answer in that respect more definite and certain. The acts and defaults constituting contributory negligence should be averred. (5 Ency. Pl. & Pr. 12; Thompson on Negligence, sec. 374; Nellis v. Traction Co., 3 C. C. (N. S.) 527; Durack v. Traction Co., Id. 531; Price v. Water Co., 58 Kan. 551; 3 Bates Pl. & Pr. 2287.)

While the amended answer shows the extrinsic facts of alleged contributory negligence they were not substantiated by any evidence.

The petition clearly charges negligence on the part of the defendant, and the objections in that particular raised thereto for the first time in this court are wholly technical and insignificant. The evidence likewise establishes negligence. The rule of law in such cases as this is now settled by the case of Kreigh v. Westinghouse &c. Co., 214 U. S. 249, 53 L. Ed. 988. The employee is not obliged to examine into the employer's methods of transacting his business, but may assume, in the absence of notice to the contrary, that reasonable care will be used in furnishing appliances necessary to the carrying on of the business. While the master is not responsible for injuries resulting from the place becoming unsafe through the negligence of the workmen, where he has discharged his primary duty of providing a reasonably safe appliance and place to work, and while he is not obliged to keep the place safe at every moment so far as such safety depends upon the due performance of the work by the servant and his fellow workmen, yet the duty of providing a reasonably safe place is a continuing one and is discharged only when a place of that character is furnished and maintained. Again, if the master is negligent in that respect, and the negligence contributes to the injury, the master is liable notwithstanding concurring negligence of those performing the work. The rule thus laid down was faithfully observed in the instructions in the case at bar.

A medical expert may base his opinion upon the clinical history of the case, and may testify to the observations made and also what was told him by the patient in describing his condition and the character and manifestations of his sickness and pain. (5 Ency. Ev. 608-609; Barber v. Merriam, 11 Allen (Mass.) 322; Pullman P. C. Co. v. Smith, 79 Tex. 468, 23 Am. St. 359; R. Co. v. Novak, 61 Fed. 574; R. Co. v. Smith, 76 Ga. 209, 2 Am. St. 31; McDonnell v. Franchere, 102 Ia. 496, 71 N. W. 427; Ry. Co. v. Snyder, 117

Ind. 435, 10 Am. St. 60.)   The narration, therefore, by the
medical expert of the description by the plaintiff of his con-
dition and symptoms was competent.  However, what was
thus described by the patient to the physician was inconse-
quential and was not accepted without careful tests.   The
objection to the evidence came by a motion to strike, and
seems to have been an afterthought.   The jury could not
have been misled by the statements, which, when tested by
the physician, were found to be correct.

The objection to the admission of the pay rolls is clearly
technical.   They were not admitted in evidence, but were
merely used by the witness to refresh his recollection.   The
witness stated that he was chief clerk at the rolling mill;
that he had access to the copy of the pay roll, an exact copy
of the original; that the original had been sent to Omaha,
and were then at that place; that they were never brought
back to the knowledge of the witness.   Thereupon he gave
the dates and amounts of plaintiff's earnings at said mill.
A witness may refresh his memory from a copy of an orig-
inal memorandum made by him or under his direction at the
time the event occurred.   (Welch v. Green (R. I.), 54 Atl.
54; Terr. v. Harwood (N. M.), 110 Pac. 556; 11 Cyc. Ev.
131; Mfg. Co. v. Farrell, (Cal.) 80 S. W. 749.)   So a wit-
ness may refresh his memory by a memorandum in the prep-
aration of which he participated and the accuracy of which
he has personal knowledge, although he has no personal
recollection—so long as he knows that the memorandum was
made in accordance with the truth.   (Loose v. State, (Wis.)
97 N. W. 526; State v. Douette, 31 Wash. 6, 71 Pac. 556;
Gear v. R. R. Co., 99 N. Y. Supp. 483; 5 Curr. L. 1373; 13
Id. 716; 11 Id. 1423; 1 Wigmore on Ev. sec. 760; 2 Id.
sec. 1230; 121 Ala. 272; 56 Ill. 344; 1 Wigmore, secs. 749,
859.)   The objections to this evidence are based upon inap-
plicable decisions relating to the exclusion of copies where
the originals could be produced.   But if all this testimony
was error it was harmless, since substantially the same facts
were testified to by another witness and by the plaintiff him-
self.

Instruction No. 12 complained of does not, we contend, invoke the rule of *res ipsa loquitur*. But this case seems to come within one class of the cases wherein that doctrine can be invoked, viz: where the injury arises from some condition or event that in its very nature is so destructive of the safety of person or property and is so tortious in its quality as in the first instance at least to permit of no inference save that of negligence on the part of the person in control of the injurious agency. (Benedict v. Potts, 88 Md. 52, 40 Atl. 1057; Brown v. Donahue, (Mass.) 27 N. E. 627.) Negligence like any ultimate fact in issue may be established as well by reasonable inference from other facts as by more direct means of proof. (Barnowaski v. Helson, (Mich.) 50 N. W. 989; Blanton v. Bole, 18 S. W. 1149.) · The correct rule as applicable to the case at bar we believe to be laid down in the note to Carroll v. R. R. Co., 99 Wis. 399, 67 Am. St. 874, as follows: "Negligence is presumed from the happening of an accident if the injury occurs in consequence of something which the defendant did or did not do, and which it was his duty to do or not to do." (Ry. Co. v. Lauricella, 47 Am. St. 107.) This rule, we think, applies where the relation of employer and employee exists. (Traction Co. v. Holzenkamp, 74 O. St. 379, 78 N. E. 529, 113 Am. St. 983; Green v. Banta, 16 J. & S. 156, 48 N. Y. Super. 156; Griffen v. Manice, 166 N. Y. 18, 59 N. E. 925, 82 Am. St. 630; Shearman & Redfield on Negligence, sec. 159; Rose v. Sterens, 11 Fed. 438; R. R. Co. v. Maloy, 2 S. E. 941; Hardesty v. Lumber Co., 34 Mont. 151, 86 Pac. 29; Smith v. Memphis &c. Co., 18 Fed 304; Sullivan v. Foundry Co. (Mass.) 93 N. E. 576; Mulcairnes v. Janesville, 67 Wis. 24, 29 N. W. 565, 21 N. W. 30; Posey v. Scovill, 10 Fed. 140; Conley v. Davidson, 15 Minn. 519, 2 Am. Rep. 154.) This rule of *res ipsa loquitur* is plainly applicable to the case at bar, but if not, the instructions were so framed as to be proper upon well settled principles outside the rule.

Instruction No. 11, against which so much objection is made because of its supposed assumption of the proof of

certain facts, is not, when properly considered, subject to the criticism of counsel. No facts were assumed in the instruction that were not established by the evidence, or admitted by failure to introduce testimony controverting the facts established by the evidence of the plaintiff. The defects complained of and specified in the instruction were undisputed facts in the evidence. It is incumbent upon the appellant to show not only abstract error but prejudicial error, and to avail himself of the point that an instruction is erroneous he must point out sufficient evidence to show that upon a proper instruction there might have been a finding in his favor. (Hamlin v. Elec. Co., (Cal.) 89 Pac. 1109; In re Est. &c. (Ida.) 93 Pac. 28; State v. Home Builders, (Wash.) 91 Pac. 953.) If upon the whole record it is apparent that a correct conclusion has been reached, the judgment will not be disturbed. (Snyder v. Stribling, (Okl.) 89 Pac. 222; Spotswood v. Spotswood, (Id.) 362; In re Dolbeer's Est., (Cal.) 86 Pac. 695; Salmon v. Rathjens, (Cal.) 92 Pac. 733.) The instructions as a whole presented the law of the case and could not possibly have been misleading.

BEARD, CHIEF JUSTICE.

Carl Westman, defendant in error, brought this action against The Acme Cement Plaster Company, a corporation, plaintiff in error, to recover damages for a personal injury alleged to have been sustained by reason of the negligence of said company. The case was tried to a jury which returned a verdict in favor of Westman and against the company for $11,900. A motion for a new trial was denied and judgment entered on the verdict. The company brings error.

For convenience the defendant in error will be referred to as plaintiff, and plaintiff in error as defendant.

The allegations of negligence contained in plaintiff's second amended petition, upon which the case was tried, are as follows: "That on the 5th day of December, A. D. 1908, said plaintiff while in the service of said defendant, for hire, at its mills and works at and near said city of Laramie, and while in the discharge of his regular duties as fireman,

without fault, negligence, or want of ordinary· care on his part, but wholly through the gross, willful and wanton carelessness and negligence· of said defendant, was dangerously and permanently injured .about the head and body, by the fall of a coal-bin of ·defendant, which burst ·or collapsed because it was built, constructed and maintained in an unsafe, defective and insecure manner, by defendant, in that the upright posts supporting the same were not fastened or secured by nails, screws, bolts or in:any manner whatsoever, and were not able to withstand the lateral· pressure to which they were subjected by the weight of the coal in said bin. Plaintiff further alleges that he did not know and had no means of knowing of the defective condition of said coal-bin, and that defendant had due and timely knowledge and notice of such condition and negligently failed to remedy the same or warn plaintiff of such dangerous and defective condition, or take precautions to make the same safe and able to ·withstand or resist the pressure of the coal upon the upright posts, whereby the said bin burst or collapsed and large quantities of coal and timbers of wood were hurled upon and again plaintiff whereby he was dangerously and permanently injured by an upright post of said coal-bin which fell and hit or struck plaintiff," etc. By its answer defendant denied these allegations, and pleaded contributory negligence on part of plaintiff. The reply denied the allegations of contributory negligence contained in the answer.

It appears by the evidence that the coal-bin and the place where plaintiff worked were in the basement or lower story of defendant's mill, the bin being nine or ten feet wide and situated on the west side of the basement. The east side of the bin was constructed by placing planks against a row of posts which were nine or ten by eleven inches in size, eight or nine feet in length and about nine or ten feet apart. These posts rested on cement or stone bases at the bottom of the bin and supported a main stringer of the building above, each post having a cap three or four feet in length on its top, upon which the stringer rested. East of the bin there was a

space ten or eleven feet wide between the bin and the kettles
which plaintiff was employed in firing. The coal was put in
the bin from the west side, and at the time of the accident
was five or six feet high at the east side of the bin. The
room above, the floor of which was supported by the posts,
was used for storing plaster, cement, hair and other ma-
terial, and at the time there was stored in that room thirty-
two tons of plaster and eleven tons of cement. Sometimes
there was more and sometimes less stored there. The build-
ing had been used for the same purpose and in the same
manner for four or five years. The plaintiff was injured by
the falling of one of these posts.

It is contended by counsel for defendant that there is no
allegation of negligent construction of the bin contained in
plaintiff's petition. But we think, liberally construed, it
does charge that it was negligently constructed in that the
posts were not secured in any manner sufficiently to with-
stand the pressure of the coal against them. The evidence
shows beyond dispute that the posts were not fastened or
secured by nails, screws or bolts; but were held in place by
the weight which rested upon them, and that this had been
sufficient for that purpose from the time the building had
been constructed or so used—four or five years—up to the
time of the happening of the accident. It was therefore an
important issue of fact to be submitted to the jury upon
proper instructions whether or not such construction of the
bin was negligent. The defendant was not required to fur-
nish an absolutely safe place for plaintiff to work in, or to
secure the posts in any particular manner. Its duty was to
exercise such care in the construction of the bin, and such
diligence in maintaining it, as to afford a reasonably safe
place for the purpose for which it was used. The court,
over the objection of defendant instructed the jury as fol-
lows:

"Instruction No. 11. If the jury find and believe from the
evidence that the defendant company and its officers knew or
had reason to know the peril and danger to which the plain-

tiff was and would be exposed while in the work and em-
ployment in which he was engaged at the time of receiving
the injury complained of in his petition, and did know or had
reason to know of the defects complained of, in this: The
upright post supporting the same was not fastened or se-
cured by nails, screws, bolts or in any manner whatsoever;
and if you find from the evidence that the plaintiff did re-
ceive such injuries, and said defendant company did not
make known and had not made known and had not given
notice of such danger, peril and defects to the plaintiff; and
if the jury further find that at the time of receiving such
injury, the plaintiff was exercising ordinary care in the work
in which he was engaged, without fault or blame on his part,
was so injured, then the defendant is liable in damages, and
you should find for the plaintiff." This instruction was er-
roneous and misleading. It assumes that the plaintiff was
and would be exposed to perils and dangers and that the
defects complained of existed; and if it does not also as-
sume that a failure to fasten or secure the posts with nails,
screws or bolts was a defect for which the defendant would
be liable, it would certainly tend to so impress the jury and
lead it to conclude that a failure to so secure the posts would
constitute negligence on the part of the defendant. Nor was
the jury informed in any instruction that a failure to so
secure the posts would not constitute negligence for which
defendant would be liable, if the jury found that the post
was otherwise sufficiently secured to make the place reason-
ably safe for the purposes for which it was used.

The court also gave the following instruction over the ob-
jection of the defendant: "Instruction No. 12. The defend-
ant company was bound to use reasonable care to provide a
reasonably safe coal-bin near which plaintiff worked, and if
you find from the evidence, that said coal-bin was under the
management of said defendant company or its servants and
that the same burst and collapsed owing to the want of
proper care on the part of said defendant company and in-
jured the plaintiff and such falling of the coal bin was of

such an event that in the ordinary course of things the same would not have happened if said defendant company had used proper care, then such falling of the coal-bin in the absence of evidence to the contrary is evidence that it arose from the lack of care on the part of the defendant company and the unexplained falling of said coal-bin creates a presumption of negligence on the part of the defendant." The instruction is ambiguous in that the jury was told that if the bin burst and collapsed owing to the want of proper care on the part of defendant, then, under certain conditions, the falling of the bin was evidence that it arose from the lack of ordinary care and created a presumption of negligence on the part of defendant. The only negligence charged in the petition was that the bin was built, constructed and maintained in an unsafe, defective and insecure manner in that, the upright posts supporting the same were not fastened or secured by nails, screws or bolts, or in any manner whatsoever. The burden rested upon the plaintiff to prove not only that the bin fell and injured him, but also that it fell by reason of some defect alleged in his petition. It is not in all cases that proof of the happening of an accident raises a presumption of negligence. Indeed it has been held by many courts that the doctrine—*res ipsa loquitur*—does not apply in an action by an employee against his employer. The Supreme Court of the United States, in Patton v. Texas & P. Ry. Co., 197 U. S. 658-63, 21 Sup. Ct. 275, 277 (45 L. Ed. 361), states the rule thus: "That while in the case of a passenger the fact of an accident carries with it a presumption of negligence on the part of the carrier, a presumption which in the absence of some explanation or proof to the contrary is sufficient to sustain a verdict against him, for there is *prima facie* a breach of his contract to carry safely, (Stokes v. Saltonstall, 13 Pet. 181 (10 L. Ed. 115): Railroad Company v. Pollard, 22 Wall. 341 (22 L. Ed. 877); Gleeson v. Virginia Midland Railroad, 140 U. S. 435, 443 (11 Sup. Ct. 859, 35 L. Ed. 458) ), a different rule obtains as to an employee. The fact of accident carries with it no

presumption of negligence on the part of the employer, and it is an affirmative fact for the injured employee to establish that the employer has been guilty of negligence. Texas & Pacific Railway v. Barrett, 166 U. S. 617, (17 Sup. Ct. 707, 41 L. Ed. 1136)."

In Spees v. Boggs, 198 Pa. St. 112, 47 Atl. 875, 52 L. R. A. 933, 82 Am. St. Rep. 792, the court said: "Except in the case of a carrier, the rule is uniform that where recovery is sought on the ground of negligence of the defendant, the burden of proof is on the plaintiff, and in an action against an employer some specific act of negligence must be shown." See also, City of Greeley v. Foster, 32 Colo. 292, 75 Pac. 351; Price v. R. R. Co., 202 Pa. St. 176, 51 Atl. 756; Case v. C. R. I. & P. Ry Co., 64 Ia. 762, 21 N. W. 30; Kuhns v. C. R. I & P. Ry Co., 70 Ia. 561, 31 N. W. 868. In the last cited case the court instructed the jury as follows: "But if you are satisfied from the evidence that the accident in question by which plaintiff's decedent lost his life was unusual and extraordinary, and one that in the ordinary use of railways would not happen, it is your privilege to consider the fact of such accident as one of the circumstances from which you are to determine whether or not the road-bed or engine were in fact in reasonably good order and condition." The court said: "It is claimed that this instruction is in accord with Tuttle v. Chicago, R. I & P. R. Co., 48 Iowa, 236. But in that case the plaintiff was a passenger, and in such case the rule is that the accident, when established, casts on the defendant the burden of showing there was no negligence on its part which contributed to the accident. In this case the rule is different, and the fact that there has been an accident, whether ordinary or extraordinary, has no tendency to prove negligence. If this is the rule, then all the plaintiff had to do was to prove the accident, and he would be entitled to recover unless the defendant assumed the burden of proving it was not negligent; and this it was not bound to do. If the accident can be regarded as a circumstance tending to show negligence, then the burden may be

shifted in all cases, and the jury might regard it as sufficient
to enable the plaintiff to recover. Case v. Chicago, R. I. &
P. Ry. Co., 64 Iowa, 762, 21 N. W. Rep. 30." In McGrath
v. St. Louis Transit Co., 197 Mo. 97, 94 S. W. 872, it is
said: "This is not a case, under the facts disclosed, where
*res ipsa loquitur* applies. It has been said that there are but
two classes of cases wherein this doctrine can be invoked:
'(1) When the relation of carrier and passenger exists and
the accident arises from some abnormal condition in the de-
partment of actual transportation; (2) Where the injury
arises from some condition or event that is, in its very na-
ture, so obviously destructive of the safety of person or
property, and is so tortious in its quality as, in the first in-
stance, at least, to permit of no inference save that of negli-
gence on the part of the person in control of the injurious
agency.' (Benedick v. Potts, 88 Md. 52, 40 Atl. 1067, 41 L.
R. A. 478.)  *  *  *  But even if it were a case to which,
under proper pleadings, the doctrine would apply, yet in this
case specific acts of negligence are charged and not general
negligence. In such cases where the plaintiff chooses in the
petition to allege specific acts of negligence, the rule of law
places the burden of proving such specific negligence upon
the plaintiff, and a recovery, if had at all, must be upon the
specific negligence pleaded." (Citing many cases.) The
evidence in the present case does not bring it within either
class of cases above stated. It is not claimed that it comes
within the first class, and the evidence does not show that
the injury arose from a condition that in its nature was so
obviously destructive of the safety of person or property or
so tortious in quality as to permit of no inference save that
of negligence on part of defendant. The evidence tends to
show that the bin had been used for the same purpose for
four or five years and apparently sufficient for that purpose
and without accident; and there was evidence from which
the jury might have found that the cause of its fall was not
that the post was not sufficiently secured to withstand the
lateral pressure of the coal, but because large chunks of coal

had been thrown against the post, some time before the accident, which loosened it; and plaintiff testified that the coal was put in the bin by a man who had a contract to do so.. There is no affirmative evidence that the manner in which the bin was constructed was not such as would be adopted by men of ordinary prudence under like circumstances or that such construction was negligence, other than the fact that the post fell; under the circumstances stated the mere fact of the unexplained falling of the post (if in this case it can be said to be unexplained) is not *prima facie* evidence of negligence in construction.    Piehl v. Albany Ry., 30 N. Y. App. Div. 166, 51 N. Y. Supp. 755, affirmed in 162 N. Y. 617, 57 N. E. 1122.    The instruction was not applicable to the evidence and therefore erroneous and should have been refused.

· Counsel for plaintiff contend that the giving of these instructions, if erroneous, was not prejudicial error for the reason that in other instructions given the jury was otherwise and correctly instructed.    With that contention we cannot agree.    The instructions were quite lengthy, consisting of twenty-seven paragraphs, containing inconsistent and confusing statements.    While it is true that inconsistent instructions will not be held to be prejudicial and require a reversal of the judgment in a case where the appellate court can see from the evidence and the verdict that the jury must have followed the correct one; the rule is otherwise where it appears that the jury may have, or probably did, follow the erroneous one.    "Ordinarily an erroneous instruction is not cured by the giving of subsequent correct instructions, necessarily inconsistent therewith, since it is impossible to tell which charge the jury followed."    (38 Cyc., 1782, and cases cited in notes.)

Over the objection of defendant, Mr. Henderson, a witness for plaintiff, was permitted to state from a copy of the pay rolls of the rolling mill where plaintiff worked before and after the accident, the amount plaintiff earned each month from October, 1906, to February, 1908, before he

was injured, and for May, June, July, August and September, 1909, after he was injured. Counsel for plaintiff have devoted considerable space in their brief to a discussion of the question, when and under what circumstances a copy of an instrument or writing may be used by a witness to refresh his recollection; but that question is not presented by the record. The witness was not shown to have had anything to do with paying the plaintiff, or in the preparation of the payrolls from the copies of which he stated the several amounts, or in any way or at any time had any personal knowledge of plaintiff's earnings while so employed. After stating his name, the witness testified as follows: "Q. What is your occupation, Mr. Henderson? A. Chief clerk at the rolling mill at the present time. Q. As such chief clerk, have you access to the records and pay rolls of the rolling mills, during the years of 1906, 7 and 8? A. No, sir. Q. Well, have you access to those records? A. No, not the original pay rolls. Q. What have you access to? A. All that I have is the copy that we sent to Omaha at the time. Q. Is that an exact copy of the original? A. Yes, sir. Q. Do you know when these original records, which you spoke of, were sent to Omaha? A. They go in the 5th of each month. Q. Are they in Omaha at the present time? A. Yes, sir. Q. Are they ever brought back to this mill, in Laramie? A. Not to my knowledge." Upon that showing the witness was permitted to state the amounts from the copy referred to. It is apparent that there was an entire failure to show that the witness ever had any knowledge of the plaintiff's earnings except from the pay rolls; and not having had any previous knowledge, of course he could have no recollection to be refreshed. The testimony was incompetent and should have been excluded. Dr. McLean, one of the physicians who attended and treated plaintiff for the injury, was called as a witness on behalf of plaintiff and gave his opinion as to the extent and permanency of the injury, and also as to the necessity for the performance of a surgical operation which had been performed on plaintiff's head as a part of such

treatment.  He was permitted to testify, over the objection of defendant, to statements made to him by plaintiff in relation to his condition, sensations and feelings in the past; and that ruling is assigned as error.  The rule seems to be quite well settled that such statements of the party injured narrative of past conditions or suffering, made to the ordinary witness are inadmissible; but, "a physician may, however, testify to a statement or narrative given by a patient in relation to his condition, symptoms, sensations and feelings, both past and present, when such statements were received during and were necessary to an examination with a view to treatment, or when they are necessary to enable him to give his opinion as an expert witness." (C. C. C. & I. R. R. Co. v. Newell, 104 Ind. 264, 3 N. E. 836, 54 Am. Rep. 312.  See also U. P. R. Co. v. Novak, 61 Fed. 573, 9 C. C. A. 629; Stone v. Moore, 83 Ia. 186, 49 N. W. 76; Fort v. Brown, 46 Barb. (N. Y.) 366; Johnson v. N. P. R. Co., 47 Minn. 430, 50 N. W. 473; Pullman P. Car Co. v. Smith, 79 Tex. 468, 14 S. W. 993, 14 L. R. A. 215, 23 Am. St. Rep. 356; Barber v. Merriam, 11 Allen (Mass.); 322; Consolidated T. Co. v. Lambertson, 59 N. J. L. 297, 36 Atl. 100; and 5 Enc. Evidence, 608.)  This evidence was admissible for the purpose of affording the jury the means of determining the weight to be given to the opinion of the physician, but not as evidence tending to prove the actual condition of the plaintiff at the time of which he spoke, and the jury should have been so cautioned.  For the purpose indicated there was no error in admitting the testimony.  For the reasons stated the judgment of the district court is reversed and the case remanded for a new trial.  *Reversed and remanded.*

SCOTT, J., and POTTER, J., concur.