EARL TURPIN, APPELLEE, v. STATE OF NEBRASKA, DEPARTMENT OF ROADS AND IRRIGATION, APPELLANT.

281 N. W. 800

FILED OCTOBER 21, 1938. No. 30510.

*Richard C. Hunter, Attorney General,* and *Harry S. Grimminger,* for appellant.

*Hubka & Hubka, contra.*

Heard before ROSE, C. J., EBERLY, PAINE, CARTER and MESSMORE, JJ.

PAINE, J.

Earl Turpin, the plaintiff, suffered a broken bone in his right hand while operating a tractor for the department of roads and irrigation of the state of Nebraska. An award was made in the compensation court, from which the plaintiff appealed, and a larger award was granted in the district court, directing payment of $15 a week for a period of 87½ weeks. The state appealed.

The transcript in this case shows that the case was filed before the workmen's compensation court in February, 1938, and was heard before one member of said court at Fairbury, Jefferson county, on April 1, 1938. The report and award show that the plaintiff, while in the employ of the state of Nebraska on June 18, 1937, suffered the accident when the shift lever kicked back, striking him in the palm of the hand near the wrist, causing a fracture of the right carpal scaphoid bone. He was totally disabled from the 18th of June, 1937, to the 19th day of January, 1938, a period of 30 5/7 weeks, at which time all temporary total disability ceased. In addition, he was to receive $15 a week for a period of 35 weeks from January 19, 1938, for com-

pensation for a 20 per cent. permanent partial disability of his right hand.

Plaintiff thereupon filed a waiver of a hearing before the full compensation court, and elected to appeal directly to the district court, filing a petition therein on May 14, 1938, in which he sets out the facts and asks that the award be vacated and that a finding be made of total temporary disability of at least 50 per cent. and all medical expenses.

In its answer in the district court, defendant alleged that it had paid $460.71 for 30 5/7 weeks, and in addition had paid hospital and medical bills in the sum of $172.05, and complains that the award made was excessive and not supported by the evidence, and asks that the petition be dismissed.

Trial was had before the district judge on June 21, 1938. The court found in favor of plaintiff, and that plaintiff had sustained a permanent partial loss of the use of his right hand to the extent of 50 per cent. of the use of said hand, and that plaintiff is entitled to compensation therefor at the rate of $15 a week for a period of 87½ weeks, commencing on January 19, 1938, in addition to payments already received.

The principal question is, how much disability did the employee suffer as a result of this accident? He was first treated by Dr. Lynch at Fairbury. Later he came to Lincoln, because the fragments had failed to unite, and plaintiff could not straighten his wrist. Many X-rays were taken. An open operation was performed by Dr. Orr, the fibrous tissue was removed from between the fragments of bone, and a peg or pin was cut from the radius bone in the arm, and with that peg the two pieces were pinned tightly together.

This operation by Dr. Orr took place November 19, and the cast was removed December 7, and splints applied. In February plaintiff was again examined by Dr. Orr, and said he was unable to use his hand for tractor work, and complained of pain in the wrist.

Dr. Orr testified that the disability of this wrist was

about 17 per cent. to 20 per cent. in one motion and 30 per cent. to 40 per cent. in another motion, and testified that a union had been obtained between the fragments of bone.

The testimony of the doctors called by the plaintiff ran as follows: Dr. Rush testified that the disability was 70 per cent. to 80 per cent., and was not sure whether a union had been obtained. Dr. Noble testified there was no union, and that there was inflammation, and the disability was about 70 per cent. Dr. Wildhaber had no opinion as to whether a union had been obtained, and testified that the disability was about 50 per cent. to 60 per cent.

It will thus be seen that the medical testimony in this case agrees generally in regard to the injury suffered by the plaintiff and the treatment given. It disagrees as to the amount of disability existing at the time of trial in the right wrist of the plaintiff. It also disagrees as to whether there has been a union of the two pieces into which the bone was fractured, and as to whether there is inflammation and pain present.

It was argued by the state in its brief that "one important part of this testimony does not appear in the record, and that is the demonstrations that the plaintiff in the action made on numerous occasions before the court." Again, that "where the determining factor in the case is a subjective symptom of the claimant himself, particularly relative to pain, and the amount of grip," the court should consider such evidence very carefully.

In bone fractures it is not unusual that inflammation and pain follow, especially when open surgical methods have been necessary to unite the fractured portions. An injured man is often prevented from performing his accustomed tasks by pain caused by pressure, even when an X-ray picture may show a perfect union of the bone, and a medical expert may indicate that in his opinion the pain may be exaggerated. Plaintiff testifies that he cannot milk a cow, or pitch hay; that it seems as if there was something between the bones, and he does not have any grip, and that it is sore most of the time.

"Expressions of present existing pain, and of its locality, are exceptions to the general rule which excludes hearsay evidence." 8 R. C. L. 638, sec. 180.

"A physician who examined the plaintiff in a personal injury action for the purpose of qualifying himself to testify at the trial may testify to statements of such person during the examination as to subjective symptoms, to show upon what information the physician based his opinion." *Kraettli v. North Coast Transportation Co.*, 80 A. L. R. 1520 (166 Wash. 186, 6 Pac. (2d) 609). See *Reid v. Yellow Cab Co.*, 131 Or. 27, 279 Pac. 635, 67 A. L. R. 1.

An examination of the evidence leads us to the conclusion that his testimony is supported by that of others on practically every point, and the evidence of the work that he has tried to do, and failed because of a lack of grip in this hand, would support his testimony that he does suffer pain. The court was at a distinct advantage over this court in being able to see the movement or lack of movement in the injured wrist, and while observing the several doctors testify he could note whether their testimony was prompt, positive, definite, and carried conviction, or whether it was halting, evasive, and rather uncertain. There is no question but that the testimony is conflicting, and in such a case the conclusions reached by the trial court are not only entitled to careful consideration, but the judgment should not be reversed unless good cause is shown in the evidence set forth in the bill of exceptions, or in the law as applicable to the facts in the case.

In chapter 57, Laws 1935, the legislature, in providing for a new compensation court, set out the procedure to be followed in such cases in great detail. This act, as now found in section 48-174, Comp. St. Supp. 1937, provides that a judgment or award of the compensation court can only be set aside on four grounds, and that this court may only modify or set aside the order of the district court on four grounds, of which the third reads: "That the findings of fact are not conclusively supported by the evidence as disclosed by the record, and if so found, the cause shall be

considered *de novo* upon the record." And the fourth reads: "That the findings of fact by the court do not support the order or award."

In our opinion, the plaintiff has established his case by a preponderance of the evidence under the law just quoted. *Saxton v. Sinclair Refining Co.*, 125 Neb. 468, 250 N. W. 655; *Kanscheit v. Garrett Laundry Co.*, 101 Neb. 702, 164 N. W. 708; *American Smelting & Refining Co. v. Cassil*, 104 Neb. 706, 178 N. W. 639; *Sherman v. Great Western Sugar Co.*, 127 Neb. 505, 255 N. W. 772; *Southern Surety Co. v. Parmely*, 121 Neb. 146, 236 N. W. 178.

There being no prejudicial error in the findings of fact and the award thereon, the judgment of the trial court is hereby affirmed and the plaintiff allowed an attorney's fee in this court in the sum of $100.

AFFIRMED.