## ST. LOUIS & S. F. R. CO. v. McFALL.

No. 6829—Opinion Filed Feb. 13, 1917.

(163 Pac. 269.)

(Syllabus by the Court.)

1. **Damages—Personal Injury — Excessive Damages—Malingering—Evidence.**

As there was evidence reasonably tending to prove that plaintiff was rendered unconscious by the impact of the collision, accompanied by a blow on the left temporal region, and has, since that time, suffered, among other things, from a defective vision, an injury to his back, and generally from traumatic neurosis, there is no merit in the contention that the verdict of $2,500 is excessive, or that he was malingering.

2. **Railroads—Personal Injuries—Contributory Negligence—Question for Jury.**

As contributory negligence is no longer a question of law, but of fact in this jurisdiction (article 23, sec 6. Const.), the court did right to leave that question to the jury under proper instructions.

3. **Evidence—Hypothetical Question—Support in Evidence.**

Hypothetical question examined, and held, not to be predicated upon a hypothesis unsupported by the evidence, and hence an objection thereto on that account was properly overruled.

4. **Evidence—Expert Testimony—Basis—Subjective and Objective Symptoms.**

A physician who has examined the patient (so far after the accident that his statements to the patient cannot be said to be a part of the res gestae) for the purpose of testifying as an expert can base his opinion on the subjective, together with the objective, symptoms of the patient, relying on a history of the case, including the fact of the accident, as a circumstance upon which he came to his conclusion.

Error from District Court, Garfield County; James B. Cullison, Judge.

Suit by A. H. McFall against the St. Louis & San Francisco Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

W. F. Evans, R. A. Kleinschmidt, and J. H. Grant, for plaintiff in error.

W. J. Otjen and H. O. Glasser, for defendant in error.

TURNER, J. On July 28, 1913, A. H. McFall, defendant in error, in the district court of Garfield county, sued St. Louis & San Francisco Railroad Company, plaintiff in error, in damages for personal injuries, growing out of alleged negligence of the defendant. After answer filed, in effect, a general denial and a plea of contributory negligence and assumption of risk, in that as a car driver of the Enid City Railway Company he assumed the risk of crossing the tracks of defendant, there was trial to a jury and judgment for plaintiff, and defendant brings the case here.

The evidence shows that on February 15, 1913, plaintiff was in the employ of the Enid City Railway Company as a motorman and conductor, and, at the time he was injured,

was operating the power of one of its cars going north on Independence avenue in said city, which is crossed by defendant's tracks at right angles. At 7:15 a. m., as the car neared the tracks, it stopped some 15 or 20 feet short of them to let some passengers off, and, as from that point it is slightly up grade to the tracks, it was customary, and plaintiff approached the tracks at such a high rate of speed as to be able to coast his car over them by its own momentum after cutting off the power. At this crossing it was the custom for defendant to keep a flagman, whose duty it was to warn the public of danger. At the time the car stopped, as aforesaid, there was standing on the nearest track of defendant's railroad one of its passenger trains with its engine facing east and extending some 10 or 15 feet across the sidewalk and into the street, to within about 15 feet of the crossing; and, receiving no warning from the flagman that it was dangerous to do so, plaintiff proceeded to cross the track with his car as aforesaid when, after the vestibule of his car had crossed the first track, an engine, obscured by the intervening passenger train, backing eastward on the second track at a speed of about 10 or 12 miles per hour, came in sight about 30 feet away and, without warning of any kind, struck his car as it was crossing the second track and injured him. It is alleged in the petition that defendant was negligent in permitting the passenger engine to be left projecting, as it was, into the street, and thus obscure the view of the other defendant's tracks to the north and west of the train, in backing the colliding engine at a dangerous rate of speed, without blowing its whistle or otherwise signaling its approach, and in failing to keep the flagman at his post of duty, and to warn plaintiff of the danger before he attempted to cross the tracks.

As there was evidence reasonably tending to prove that plaintiff was rendered unconscious by the impact of the collision, accompanied by a blow on the left temporal region, and has, since that time, suffered, among other things, from a defective vision, an injury to his back, and generally from traumatic neurosis, there is no merit in the contention that the verdict of $2,500 is excessive, or that he was malingering.

It is next contended, not that the evidence was insufficient to take the case to the jury on the question of the primary negligence of defendant, but that the court erred in overruling the demurrer to plaintiff's evidence for the reason that:

"The mere recital of the foregoing facts shows conclusively that the proximate cause of plaintiff's injury was his own rash act in driving his car right in front of an engine that has the right of way over the crossing."

From which and the argument in support of this assignment we understand the contention to be, not that plaintiff failed to look and listen at the time he stopped short of the crossing to let his passengers debark, but that, as the evidence discloses he failed to stop, look, and listen while between the first and second tracks on his way over the crossing, the court should have held such failure to be contributory negligence per se and the proximate cause of the injury, and sustained the demurrer to the evidence. Not so. In the first place, if failure to stop, look, and listen were contributory negligence per se, which it is not (Chickasha St. R. Co. v. Marshall, 43 Okla. 192, 141 Pac. 1172), as contributory negligence is no longer a question of law, but of fact in this jurisdiction (Const. art. 23, sec. 6), the court did right to overrule the demurrer and leave that question to the jury under proper instruction. And we think the jury did right in finding against the defendant on this issue for, so far as we can see, there is not a scintilla of evidence to show contributory negligence on the part of plaintiff. It would seem, as in the case of an open safety gate (St. L. & S. F. R. Co. v. Hart, 45 Okla. 659, 146 Pac. 436), that the absence of a danger signal from the flagman was an implied invitation for plaintiff to attempt to cross the tracks as he did, and an assurance to him of safety from any passing train, and that he could not be chargeable with contributory negligence in acting upon such invitation.

It is assigned that the court erred in permitting Dr. Damrell, who testified as a witness for plaintiff, to be asked:

"Q. Assuming that A. H. McFall had been standing in the vestibule of the street car on February 15, 1913, and, in a collision at that time between the street car and a railroad engine, had received a blow upon the head which rendered him unconscious, and bruised back, could, in your judgment, that blow and collision be the cause of his present condition as you have described it? A. I believe it is the probable cause."

It is contended that the same is predicated upon the hypothesis that plaintiff's back was bruised, in the absence of evidence to that effect. But, as plaintiff testified that he was knocked down and rendered unconscious by the impact of the collision, that he remained in a semiunconscious condition all that day, and the next day was so sore he could not turn over in bed and through his side, back, and head, and the could not sleep for a week, owing to pain

physician testified that he found anathesia about the lumbar region, extending from two to three and one-half inches, in which there was no sensation on pricking the skin with a needle, we are of opinion that the evidence tended to disclose an injury to the back, and that the question was proper. The evidence discloses that some time after the injury plaintiff visited the office of Dr. Damrill, and was examined by him, and that the doctor, after qualifying as an expert, testified as follows:

"Q. Just state what you did in the way of examining McFall at that time? A. Well, I took his family and personal history—

"By Mr. Grant: Defendant objects to any opinion of the witness predicated upon statements made to him by the plaintiff, for the reason that the same is hearsay (which objection was overruled and exceptions saved). A. I examined into his personal and family history and noted his subjective symptoms, and finally made an examination into his physical condition from an objective standpoint."

And, after testifying that as a result of the examination his opinion was that plaintiff was suffering from nervous trouble or a certain form of neurasthenia, known as "railroad brain or railroad spine," he further testified:

"Q. Just state what you ascertained to be the cause of McFall's neurasthenia. A. Well, during the examination of the objective symptoms, after having obtained the subjective symptoms, I, of course, examined into the condition of his heart, pulse, respiration, and other symptoms that I might hereafter mention in order to relate to you what I found as a basis of my conclusion from the diagnosis. I found the pulse beat to be 110 per minute; respiration about normal; no particular dullness over the area of the heart, but a very rapid heart action; the systole and diastole beats of the heart were very close together. After ascertaining the conditions of the pulse, heart and respiration, I concluded to examine further into his condition as to a nervous disorder. Of course, having had the subjective symptoms and history of the case relative to his injury, I examined the cranium and spine. I found an injury to the cranium near the junction of the temporal and frontal bones of the cranium. I examined further over the cranium, but found no injuries of any significance. I examined the spinal column, but found no physical defects of the spinal column, but on local examination of the skin I found anathesia about the lumbar region, extending from two to three and one-half inches, in which there was no sensation on pricking the skin with a needle. On examination of other organs into the objective symptoms of said patient, I arrived at the conclusion of the diagnosis as railway spine or railway brain. That is all.

"By Capt. Grant: Comes now the defendant and moves the court to strike the answer of the witness for the reason that it is not responsive to the question, and is predicated upon the subjective symptoms as given to the witness by the plaintiff, and for that reason same is hearsay.

"The Court: The motion to strike the answer of the witness from the record is overruled (which was also excepted to.)"

Whereupon the witness further testified:

"Q. I mean, how will traumatic neurosis affect the man during the remainder of his lifetime, if any? A. It will render him more or less as he is now; less able to perform any mental and physical duties necessary toward his financial welfare" (which was objected to, whereupon the court overruled defendant's objections and exceptions were saved).

The question raised by the objection to the answer of the witness to the first question propounded him is whether a physician who has examined the patient (so far after the accident that his statements to the physician cannot be said to be a part of the res gestae) for the purpose of testifying as an expert can base his opinion as such on statements made him by the patient at the time and on an examination into the physical condition of the patient from an objective standpoint, or, in other words, base his opinion on the subjective, together with the objective, symptoms of the patient, relying on the history of the case, including the fact of the accident, as the main circumstance upon which he came to his conclusion, as he testified he did. In C., R. I. & P. R. Co. v. Jackson, Adm'x, 63 Okla. 32, 162 Pac. 823, we held that an opinion so based was admissible in evidence. There the court, speaking through Sharp, J., propounded the question thus:

"The question here is whether a physician who testifies as an expert should be allowed to give his expert testimony, based upon the proven history of the patient as he learned it from him personally, in consultation with him in respect to his ailments."

Answering it, we said:

"While the physician's testimony in part is based upon narrative, involving the history of the case given them by Jackson, it does not appear that the latter undertook to state the occasion of his injury, or its cause, or the circumstances under which it occurred, or who was responsible for its happening. In other words, the evidence does not disclose that the narrative (if such it may properly be called) included other than such facts as were necessary to enable the physicians to satisfactorily diagnose and treat the case, and did not attempt to give its cause, or to place responsibility for its occurrence."

—and held the evidence admissible. And the same may be said of the testimony of the expert here involved. For, while it appears that the opinion of the expert was based upon statements of the witness made at the time of his examination, what those statements were does not appear. For this reason it is safe to assume that they only included such information as was necessary to an intelligent diagnosis, and did not include a statement as to the occasion of the injury or seek to place responsibility for it on any one. We are therefore of opinion that the opinion of the expert that defendant was suffering from a certain form of neurasthenia, known as "railroad brain or railroad spine," was properly admissible in evidence, although that opinion was based in part on statements made him by the plaintiff from which he learned the subjective symptoms of the patient.

Up to this time, witness, during the course of his examination, had not been called upon to testify as to what were plaintiff's symptoms, either subjective or objective, much less to narrate any statement made to him by the plaintiff concerning his subjective symptoms. Nor was it intended by the next question propounded to have him testify concerning any of those subjects of inquiry. On the other hand, it was probably the intent of counsel to leave the witness open to cross-examination on those matters and to proceed to inquire as to the cause of plaintiff's ailment, evidently intending that the witness would attribute it to the injury complained of. Accordingly, the next question was: "Just state what you ascertained to be the cause of McFall's neurasthenia?" The most that can be said of the answer is that the witness mistook the question, and, instead of answering as expected, undertook to give the objective symptoms of the patient in detail, and upon all the symptoms, both subjective and objective, again classified the neurasthenia as railroad brain or railroad spine. Of course the answer was not responsive to the question, but was harmless, and the failure of the court to strike it as irresponsive equally so. It also contained the opinion of the witness as an expert, based upon statements made him by plaintiff at the time he was examined; but, as we have just held that the opinion of the expert is not inadmissible for that reason, we find no reversible error in overruling defendant's objections to the admission of the evidence complained of.

We have examined the court's instructions and defendant's requested instructions, and, finding no error in the record, the judgment is affirmed.

All the Justices concur.