### De CAMP et al. v. COMERFORD.

No. 18545. Opinion Filed Dec. 11, 1928.

J. E. Curran, S. H. King, and H. F. Wilson, for plaintiffs in error DeCamp and Lancer.

Bellatti & Brown, for plaintiff in error Carl Kohler.

A. B. Ross, for defendant in error John Augustin Comerford.

REID, C. This suit was brought by John Augustin Comerford, a minor, by his father, John Comerford, as next friend, against Oral DeCamp and Charles Lancer, copartners, and Carl Kohler, as defendants. The plaintiff alleged in his petition that he was 12 years old at the time of the accident out of which this suit arose, and that, on the 22nd day of October, 1922, he was riding with his father in a milk delivery wagon in the city of Blackwell, Okla., proceeding east on Paden avenue along the south side; that at the intersection of Paden avenue and Fourth street, the vehicle in which he was riding turned left into Fourth street, and before it was fully out of Paden avenue, the rear end of the same was struck by an automobile truck going west on Paden avenue along the north side thereof; that said truck was owned by the defendants DeCamp and Lancer, and was being operated by the defendant Carl Kohler, their employee, and in pursuit of his employment at the time of the accident; that as a result of the accident plaintiff was thrown from the vehicle to the pavement, and thereby sustained serious injuries to his back and spine; that his injuries were caused by the negligence of the defendant Carl Kohler, in that he was driving the truck at a reckless and dangerous rate of speed of approximately 25 or 30 miles an hour, and carelessly and negligently drove the same into the vehicle in which plaintiff was riding; plaintiff was not driving or operating the milk delivery wagon, and was without fault in the premises, and plaintiff prays for damages.

The defendants DeCamp and Lancer denied the allegations in the petition except those they specially admitted. They admitted the partnership; denied that plaintiff was injured; and pleaded that, if he was injured, it was due to his contributory negligence. They specifically denied that the defendant Carl Kohler was acting for them in any capacity at the time of the alleged accident. but was then using the truck for his own business or pleasure. and was not

engaged in any business or mission for those defendants.

The defendant Carl Kohler, in his answer, denied the allegations of plaintiff's petition, except those admitted; and specially admitted that, at the time of the accident out of which arose the claims of the plaintiff, he was an employee of the defendants DeCamp and Lancer, and was driving or operating an automobile truck owned by said defendants in pursuance of his employment. He denied that he was guilty of any negligence in the operation of the truck, and alleged that the accident was due to the negligence of the driver of the vehicle in which plaintiff was riding. The plaintiff for reply traversed the allegations of the answers of the respective defendants inconsistent with his petition.

The case proceeded to trial to a jury which returned a verdict in favor of the plaintiff against the defendants DeCamp and Lancer and Carl Kohler, for the recovery of the sum of $4,000, whereupon judgment was entered by the court against Kohler, individually, against DeCamp & Lancer as a partnership, and next against them as individuals composing the partnership. From this judgment, after unsuccessful motion for new trial, the defendants DeCamp and Lancer and Carl Kohler have prosecuted their separate appeals.

As we view the case, it can be disposed of, as to the defendants DeCamp and Lancer, by considering the question as to whether the court erred in refusing their request for an instructed verdict at the conclusion of all the testimony.

The evidence shows that DeCamp and Lancer for some time prior to the accident were engaged in the distribution of fuel oil for drilling wells in the oil field work in the vicinity of Ponca City and other places, and that the defendant Kohler was in their employment driving an automobile truck used in the delivery of this fuel. The evidence is uncontradicted that, on the day of the accident, Kohler had delivered all the fuel oil in his truck tank in the vicinity of Ponca City, and returned to Blackwell about 7 o'clock in the evening, going into the city north on Main street. It was his duty to return the truck for the night to the truck yard of DeCamp and Lancer in the city of Blackwell, which yard was located a block east on Main street, at the corner of A and Lincoln streets. Paden avenue runs east and west and Fourth street runs north and south through the city. The accident occurred at the intersection of these streets; the particular place not being here material. Main street is located east of Fourth street, and parallel with it. In going up Main street Kohler did not turn to his right toward the truck yard of his employer, but, for the purpose of seeing a young lady who had his automobile and to request her to bring it down town for him, he proceeded north to Paden avenue where he turned west and drove to Fourth street where the accident occurred. He drove a short distance after the accident, returned, and had a conversation with plaintiff's father, and then proceeded west on Paden avenue to the home of the young lady, where he made his request, and then went to the truck yard of his employers, where he left the truck for the night. Under the rules of his employment he had no right to use the truck for any business or pleasure of his own, and from the time when he proceeded north on Main street, where he should have turned toward his employers' truck yard, he was engaged in a mission in no way connected with his masters' business, and solely for his own convenience or pleasure, and the accident occurred not while he was returning from his mission, but in his going.

The general principle of law governing the liability of the master for the negligence of his servant has not been changed by the advent of gasoline driven vehicles, but remains the same. It is founded on the principle that he who expects to derive advantages from an act which is done by another for him must answer for any injuries which a third person may sustain from it. The rule is stated in 18 R. C. L., page 794, section 253, as follows:

If the injury complained of resulted from the wrong of the servant or agent of the defendant and while acting within the scope of his duties as servant or agent, the plaintiff is entitled to recover. But, conversely, if the wrongful act was not one falling within the real or apparent scope of the employer's business, no recovery will be allowed."

It is true that, upon evidence that DeCamp and Lancer owned the truck driven by Kohler at the time of the accident, and that Kohler was then in their employ, the presumption then arose that he was acting for them and in the scope of his employment, and the burden of proof was thereby placed on those defendants to show that Kohler was not acting for them, but was using the truck for his own purposes and outside the scope of his employment, but this burden was discharged by undisputed evidence that, at the

time the accident occurred, Kohler had departed from the masters' business, and was on an independent mission of his own. Stumpf et ux. v. Montgomery, 101 Okla. 257, 226 Pac. 65.

And the court in that case stated the principle here applicable in the following language:

"It is well settled that, even though the driver of the car is the servant of the owner of the car, the owner is not liable, unless at the time of the accident, the driver was acting within the scope of his authority and in regard to his master's business"

—and quoted numerous authorities sustaining the proposition.

In the case of Carder v. Martin, 120 Okla. 179, 250 Pac. 906, the defendant sent his son from his farm to the city of Lonewolf in Kiowa county, in defendant's automobile, to purchase a knotter for a cornbinder they were then using to harvest defendant's crop of corn. Lonewolf is southeast of defendant's farm, and Hobart is east of Lonewolf. It was the duty of the son to return direct to the farm, but, instead of doing so, he drove east to the town of Hobart for the purpose of visiting a young lady, and just as he was starting on his return home from Hobart, the accident occurred out of which that suit grew. The court held that in that case, where the plaintiff's evidence disclosed these facts, the trial court did not err in sustaining defendant's demurrer to the evidence, and said:

"The evidence discloses that E. L. Martin lived in a northwesterly direction both from the town of Lonewolf and the city of Hobart, and, therefore, in going from Lonewolf to Hobart, Virgil Martin, his son, was going in a direction opposite to that in which his line of duty should have directed him, and the fact that in returning from Hobart to his home, he did not return to Lonewolf, would be of little consequence in determining whether the deviation was slight or unusual.

"It is true that decisions may be found in other jurisdictions holding that, where there has been a departure by the servant from the route marked out by the master, an accident occurring while the servant is returning to the place of departure will not be regarded as outside the scope of the master's business, since the servant, having accomplished his own purpose, will be regarded as within his line of duty while returning to the place from which he departed.

"We think, however, that the correct test to be applied is not so much whether the conduct of the servant was a departure or a mere deviation from his line of duty, but whether, taking into consideration the purpose of his mission and the distance traveled, it could be said that the servant was stepping aside, in some marked or unusual manner, for some purpose wholly disconnected with his employment.

"As was said in Tyler v. Stephans, Adm'x (Ky.) 174 S. W. 790, in the second paragraph of the syllabus:

" 'Where the defendant's chauffeur, after taking defendant and her family to a place where he was expected to return for them later, instead of following his general directions to return to the garage, set out on a trip wholly unconnected with the defendant's business, and solely for his own pleasure and the accommodation of a friend, during which the machine struck and killed a pedestrian, defendant was not liable, though the chauffeur was returning from his trip to resume defendant's business'."

And we find the following cases by this court sustaining the foregoing doctrine, to wit: Echols v. Hurt, 116 Okla. 43, 243 Pac. 493; McCullough v. Harshman, 99 Okla. 262, 226 Pac. 555; Stumpf et ux. v. Montgomery, supra; Whitehorn v. Mosier, 119 Okla. 155, 245 Pac. 553; Campbell et al. v. Kirkpatrick, 120 Okla. 57, 249 Pac. 508; St. John et al. v. Ivers, 124 Okla. 215, 255 Pac. 706.

But plaintiff says that, in the case of Lee v. Pierce, 112 Okla. 212, 239 Pac. 989, this court has recognized an exception to the general rule, which exception must be applied in this case, and there held that if the injury is caused by the negligence of the servant while deviating from the direct route he was required by the master to go, the master is not relieved from liability, unless the servant in making such deviation abandoned the master's business. An examination of this case discloses that the wife of the defendant had directed defendant's chauffeur to drive defendant's car down Denver street to the laundry and bring the defendant home. Instead of going down Denver street, he turned on a street not disclosed by the record, and at the place of the accident the car had been driven a little less than four blocks from the course the chauffeur was directed to follow. An examination of this case shows that the decision turns upon the point that there was no evidence in the record showing that the chauffeur was not engaged in his master's business when the accident occurred, and the court held that, in the absence of such proof, when it was shown that the chauffeur was an employee of the defendant and was operating the defendant's car, the presumption was that he was engaged in his master's business and within the scope of his em-

ployment, and that, under these facts, the court did not err in submitting the case to the jury, because the court could not say that the deviation was such, as a matter of law, as to constitute a complete departure from or an abandonment of the master's service.

In this case there was no deviation by Kohler in his route to the truck yard, where he was required by the terms of his employment to place his truck when empty, as it then was. There is no absence of evidence showing his purpose in being at the place where the accident occurred, as there was in the Lee-Pierce Case, but the proof is affirmative that he was there—going in almost opposite direction from the yard—in pursuance of his own pleasure or business.

Evidence, which plaintiff claims tended to prove that, at the time the accident occurred Kohler was acting for DeCamp and Lancer and within the scope of his employment and therefore sufficient to have the question submitted to the jury, comes from the testimony of the mother and father of the plaintiff. Their testimony is to the effect that they went to see DeCamp, a member of this firm, and in his discussion of the wreck, the father asked him, DeCamp, if Chan Bradfield was the driver of the truck at the time of the accident, and DeCamp replied, "Carl Kohler was driving for us then." We cannot perceive how this can be construed as an admission of the fact that at the particular time the accident occurred, Kohler was pursuing his duty as their employee, but it is apparent that by the answer DeCamp only meant to convey the idea that Kohler was then in their general employment of driving the truck.

In plaintiff's brief our attention is called to the fact that the defendant Kohler, in his answer filed in this case, admitted that at the time of the accident he was driving an automobile truck owned by DeCamp and Lancer in pursuance of his employment. This answer was filed by the attorneys for Kohler, who are not the same as those who have all the time represented DeCamp and Lancer. On cross-examination Kohler was asked by the attorney for the plaintiff if he did not make the foregoing statement in his answer. This was objected to by De-Camp and Lancer on the statutory grounds, and also that it was not binding on them, and it was then suggested by plaintiff's counsel that such testimony would go to the credibility of the witness. And the trial court said that, without holding that it was

binding upon DeCamp and Lancer, he would overrule the objection and permit witness to answer as a part of the cross-examination; then Kohler answered, "I had been driving the truck for DeCamp and Lancer that day." And counsel for plaintiff then asked this question: "I am not asking what you had been doing, I am asking you what you have in your answer, and if that is not correct as to what you have in your answer." Answer, "Yes."

It will be seen from the foregoing that the testimony was not admitted by the court as substantive evidence to establish the fact that, when the accident happened, Kohler was acting within the scope of his employment, but only as a statement by Kohler contradictory of and impeaching his testimony given on the trial. This testimony had the same effect as if the answer had been introduced in evidence by the plaintiff, after Kohler testified, and with the limitation as to DeCamp and Lancer which the court there placed around it. The effect of the evidence as thus presented is well stated in 6 Jones, Commentaries on Evidence, p. 4769, as follows:

"It often happens that impeachment by proof of inconsistent acts or statements is of vital importance in its effect upon the credit of the witness; and it is not infrequent that jurors fail to understand that such testimony is only received to affect the credibility of witnesses. It is clearly the rule and theory, however, that the impeaching testimony does not establish or in any way tend to establish the truth of the matters contained in the contradictory statements. These statements are not substantive testimony; that is to say, they are not evidence of the truth of the matters stated, but their force and effect is to be strictly confined to the object of impeaching the credit of the witness who is shown to have made them."

The first assignment argued in the brief of the defendant Kohler is that the evidence is insufficient to show actionable negligence against him. While the testimony on this point is conflicting, there is evidence reasonably tending to support the general verdict of the jury; it necessarily includes a finding that the accident was caused by the negligence of this defendant.

The next assignment of error urged by Kohler is that the evidence is insufficient to prove that any injury was sustained by the plaintiff from the accident. We can only determine the question as to whether there is any evidence reasonable tending to sustain the verdict of the jury. Laying aside

all other testimony and taking that of the boy, plaintiff, we find this evidence shows that the impact of the truck against the horse-drawn vehicle in which he was riding threw him upon the pavement, and he was injured in his arm and back by the fall; that from that time until the date of the trial he had suffered with pain in his back. The medical doctor testified that he examined him more than two years after the accident, and he found considerable tenderness in the lower part of the boy's back; that he made an X-ray photograph of that part of plaintiff's back; that it showed a considerable lesion—an inflammatory process—within the bony structure of the pelvis, about the size of a half-dollar. The photograph is in the record, and appears to corrobrate the doctor's testimony. There is sufficient evidence to show a causal connection between the injury plaintiff received at the time of the accident and his condition at the time of the trial.

The next assignment of the defendant Kohler presents the propositions that the defendant was prejudiced by the admission of improper evidence, and that the verdict is excessive and due to passion and prejudice of the jury. The first proposition of this assignment attacks the action of the court in permitting a chiropractor who examined and treated the plaintiff to answer a hypothetical question propounded to him by plaintiff's counsel. And this assignment also goes in the same way to the testimony of the medical practitioner who made an examination of the plaintiff, including an X-ray picture made by him of that part of plaintiff's body wherein it is claimed the injury is located. We have examined each of the questions propounded to and answered by these witnesses, and it appears to us that a proper interpretation of the questions would not designate them as hypothetical, but rather they appear as calling for the opinion of experts to be given by them after examination of the patient, based upon their findings as to his condition, and upon the history of the case as given by him. However, if we interpret these answers as responsive to hypothetical questions, we find that they were predicated upon hypotheses supported by the evidence in the case, and admissible under the rule announced by this court in these cases: Shawnee Gas & Electric Co. v. Hunt, 32 Okla. 368, 122 Pac. 673; St. Louis & S. F. Ry. Co. v. McFall, 63 Okla. 124. 163 Pac. 269; Chicago, R. I. & P. R. Co. v. Jackson, 63 Okla. 32, 166 Pac. 823;

Chicago, R. I. & P. Ry. Co. v. Bentley, 43 Okla. 469, 143 Pac. 179.

The defendant next claims in this assignment that the verdict is excessive, and due to passion and prejudice of the jury.

We have heretofore stated the evidence of plaintiff, the chiropractor, and also that of the medical doctor, and what was shown by the X-ray photograph he made. In that connection the doctor testified that there is a probability that tuberculosis will finally develop, or that plaintiff will become a nervous wreck or total invalid, and that there is no reasonable probability that a cure could be affected. We are therefore not able to say the verdict in the case was excessive or the result of passion or prejudice on the part of the jury.

For the reasons herein stated, the judgment of the trial court in favor of plaintiff and against the defendants Oral DeCamp and Charles Lancer, individually, and as a copartnership, is vacated and set aside, and the cause is remanded with directions to the trial court to render judgment in their favor. As to the defendant Carl Kohler, the judgment is affirmed.

BENNETT, TEEHEE, LEACH, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is ordered.