**BAKER, Adm'x, v. J. H. HUDSON DRILLING CO.**

No. 19458.   Opinion Filed Sept. 16, 1930.

Rehearing Denied June 23, 1931.

G. C. Abernathy and Edward Howell, for plaintiff in error.

Ames, Cochran, Ames & Monnet and Johnson, McGill & Johnson, for defendant in error.

TEEHEE, C. In this cause, appellant, Anna M. Baker, as administratrix of the estate of Webster D. Baker, deceased, sued appellee, J. H. Hudson Drilling Company, a copartnership composed of J. H. Hudson, Henry Hudson, and Frank Bernsen, to re-

cover damages in the sum of $60,000 for a personal injury suffered by Baker during his employment with the company, resulting in death, which injury was alleged to have been attributable to the master's negligence in failing to furnish suitable tools and appliances in intestate's employment.

Defendant denied the allegations of plaintiff's petition, and further interposed the affirmative defenses of assumption of risk and contributory negligence, which were by plaintiff denied in her reply.

The cause proceeded to trial before a jury. At the conclusion of plaintiff's evidence, defendant interposed a demurrer based on the grounds "that said evidence does not establish facts sufficient to constitute a cause of action in favor of the plaintiff and against the defendant, nor does it prove any of the allegations contained in plaintiff's petition, and it further shows that the deceased, W. D. Baker, was guilty of the grossest kind of negligence, and that there is no primary negligence on the part of the defendant." The demurrer was sustained and the action dismissed. This ruling of the trial court is assigned as error.

Plaintiff contends that when her evidence is tested by the general rule whereunder every fact and fair and reasonable inference thereof must be treated as true, with all evidence favorable to demurrant eliminated, a prima facie case against defendant was established, and that by reason thereof the court erroneously sustained the demurrer.

Plaintiff's evidence material to be noticed was given by one Harry Niebel. This, on direct examination, showed that defendant was engaged in the drilling of an oil well in Seminole county. In such an operation two shifts called "towers" of two employees each were employed, a driller and a tooldresser, one tower being engaged from midday to midnight and the other from midnight to midday. Plaintiff's intestate was the tool dresser, and with the driller, the witness named, was on the midnight tower. The driller was the foreman in charge of the work and Baker was the utility man. On the occasion of the injury, the tower was engaged in setting, or as it is termed in oil field parlance, "hanging," the drilling bit in the drilling stem. The bit was a piece of steel eight inches in diameter and six feet long, and the stem was of less diameter and 30 feet long, and both it is fairly to be inferred being of more than ordinary weight and requiring mechanical power to place them in position for hanging. The stem is attached to a steel wire cable which is run through a pulley at the top of a derrick and back down to and wound on a drum, which is called a bull-wheel equipped with a brake. This equipment is operated by means of mechanical power.

In the process of hanging a bit a swivel wrench is used. This wrench is a flat circular piece of metal ten inches in diameter and a quarter of an inch thick with a hole in the center arranged for removable plates of a size to fit a bit of a corresponding size, and is equipped with side handles by which the bit is turned and screwed into the stem socket by muscular power when the two appliances are placed in position. A movable chain hoist is used to lift the bit into a proper and upright position through attachment of the hoist chain to the wrench, and the stem is lowered by the machinery to the proper level to form the contact between the stem and the bit. The driller operates the machinery in the lifting and lowering process.

It developed that the eight-inch plate, the size of the bit to be hung, was missing. The driller decided to use a ⅓d of a two-inch manilla rope as a means of the hanging process in the place of the swivel wrench. Upon lifting and placing the bit in a proper position, the driller lowered the stem, and on account of a defective brake, of which the driller knew, the stem slipped or dropped two or three inches below the proper level. Baker did not know of the defective condition of the brake. It was the driller's business to keep the machinery in good condition. At the direction of the driller, the rope was removed and Baker was directed to hold the stem in position. When the driller directed this method of hanging the bit, the tool dresser asked if it could be done in that manner, and was told that it could, whereupon he suggested that the rope should be replaced as the bit might get away from him, but he was again told to hold the bit. In lowering the stem again, it again slipped two or three inches below the proper level, and in the lowering process struck the drill bit forcing the same to one side and causing the tool dresser to lose his control over it and it fell across his left leg and crushed it.

The swivel wrench is an appliance that has been commonly used in hanging a bit for the past 15 or 20 years, and prior to its invention the use of a rope was the common method. The work of hanging a bit with the use of the swivel wrench is less hazardous than in the use of a rope. Likewise, if the brake of the mechanical equipment had been in good order, the hazards of the work would have been less than they were.

On cross-examination, it was brought out, by way of impeachment, that the witness had testified in a deposition taken by the defendant a few days before the trial, to the effect that he had told Baker that the brake was loose and needed fixing, and that they would fix it as soon as the work was making good progress, and that it was Baker's business to help in the fixing of machinery if the driller needed assistance, and that he also had told Baker to put the rope back on the bit in the hanging process, and that Baker replied that it was not necessary, as he thought he could hold the bit.

It is evident from the record that, in passing on the demurrer, the court considered this evidence brought out on cross-examination, and taking that into consideration, the court proceeded on the theory that thereby there was no primary negligence shown, or that the servant was guilty of contributory negligence, either of which points would defeat recovery, and that therefore there was no issue for determination by the jury.

It is the rule that evidence of a prior statement of a witness, who is not a party litigant, which is at variance with his testimony at the trial of a cause, only goes to his credibility, and does not tend to establish the truth of the matters embraced in the contradictory statement, and cannot be considered in determining the propriety of a demurrer to the evidence where the case is tried to a jury. DeCamp v. Comerford, 134 Okla. 145, 272 Pac. 475; Offutt v. Columbia Exposition, 175 Ill. 472, 51 N. E. 651; 6 Jones, Commentaries on Evidence (2nd Ed.) 4767, sec. 2414, and many cases there cited.

With this impeaching evidence therefore also eliminated, it would seem that the rule relied on by defendant, namely, that where no primary negligence is shown a demurrer will lie, is rendered inapplicable, as will presently appear.

It may be said that employment in the drilling of an oil well, at best, is hazardous. When the business is conducted with antiquated appliances generally discarded by the industry by the use of newer and safer appliances, the hazard must be increased, and the business rendered extra hazardous, so that, at the least, it may be said to be evidence of negligence for a master to expose the servant to the extra hazard by the use of antiquated appliances. This reasoning is not without support. Troxler v. Southern

Railway Co., 124 N. C. 189, 32 S. E. 550, 70 A. S. R. 580; Beard v. American Car Co., 72 Mo. App. 583; 1 Shearman & Redfield on Negligence (6th Ed.) 21, sec. 12. And, certainly, when the servant was directed to aid in hanging the bit without the use of the rope, and when an essential part of the mechanical equipment was in a defective condition and so known to the foreman, this was a direction to perform the work in a dangerous manner.

It is a recognized rule of the law of master and servant that the master is liable in damages for an injury suffered by the servant attributable to his obedience to the order of the master or his representative to perform work in a dangerous manner, unless the danger is so imminent that an ordinarily prudent man would not incur it, and that in such case the question of the servant's negligence in the execution of the order is an issue of fact for determination by the jury, and not one of law for the court. The rule has been many times applied in a variety of circumstances. See 39 C. J. 894, sec. 1115; 18 R. C. L. 655, sec. 149; 2 Bailey on Personal Injuries (2nd Ed.) 1257, sec. 414; 4 LaBatt's Master and Servant (2nd Ed.) 3927, sec. 1368; 5 Thompson on Negligence (2nd Ed.) 43, sec. 5379, and the many cases collated and cited by these standard authors.

We are of the opinion, therefore, that plaintiff's evidence, considered under the general rule of verity, established facts sufficient to constitute a cause of action in favor of the plaintiff and against the defendant, and that the trial court therefore erred in sustaining the demurrer.

The judgment of the district court is reversed, and the cause remanded, with directions to overrule defendant's demurrer and reinstate the case, and for such further proceedings as may not be inconsistent with this opinion.

REID, HALL, EAGLETON, and DIFFENDAFFER, Commissioners, concur. BENNETT, LEACH, and FOSTER, Commissioners, dissent.

By the Court: It is so ordered.