MT. ROYAL CAB COMPANY, INC., ET AL. *v.* WILLIAM E. DOLAN.

[No. 52, January Term, 1934.]

*Decided April 6th, 1934.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Walter L. Clark,* with whom were *H. Beale Rollins* and *Webster C. Tall* on the brief, for the appellants.

*L. Wethered Barroll,* for the appellee.

PARKE, J., delivered the opinion of the Court.

The appeal on this record is from a judgment of $4,000 recovered by the plaintiff against the defendants for injuries received by the plaintiff, while on a business trip to Baltimore, in the collision of the automobiles of the parties.

The negligence of the defendants is admitted, and the

issue submitted to the jury was the amount of the compensation to be found for the injuries sustained. The questions presented for review are in three bills of exceptions. The first is with respect to the admission of the opinion of a medical expert; the second is as to the rejection of the prayer of the defendants that the jury could not award the plaintiff any damages for permanent injuries; and the third is the refusal of the trial court to award a new trial because of the allegation that the aggregate of the several amounts of damages favored by every juror was divided by the number of the jurors and the quotient was the amount of the verdict rendered by the jury.

1. The plaintiff was injured on January 28th, 1933, and went the next day to the office of Dr. Arthur L. Fehsenfeld, who examined the plaintiff with reference to the injuries inflicted, and found him extremely nervous and suffering great pain, particularly at the back of his neck and across his shoulders, which was due to the inflammation of these muscles as a result of their having been strained or sprained. A careful examination did not reveal any damage to bone. There was no swelling, no bruises, nor visible evidence of the injury. The doctor treated the patient, but the situation and active function of the muscles affected in continually holding the body and head erect made it impracticable to immobilize the parts involved so as to give the muscles sufficient rest during their healing period, which, if immobilization had been possible, would have been a probable period of ten days to three weeks. The doctor saw the patient again on February 7th, 8th, and 9th, 1933. Under the conditions described, in which the parts could not be immobilized, it was difficult to estimate what would be a reasonable period for healing, and the doctor said he would not attempt to say how long it would take for a complete recovery from the injuries sustained. The doctor did not see the plaintiff again professionally.

The trial was on September 27th, 1933, and Dr. Fehsenfeld was the first witness called. After the witness had testi-

fied in substance to what has been stated, counsel for the plaintiff asked the question: "What, in your opinion, based on your experience, would have been the probable result in this patient of the conditions found to exist when you examined him last January and February?"

In an action for the recovery of damages for personal injuries suffered subsequent to the commission of the wrong, the recovery is limited to those consequences which have actually and naturally ensued the tort, or which may certainly or reasonably and probably result as a proximate consequence of the act, but not consequences which are merely possible, and so speculative or conjectural.

The plaintiff had offered no testimony except that of the doctor who examined him the day after the accident, and who had been last consulted professionally in February on the plaintiff's business trip to Baltimore. The doctor had already fully testified, to the extent permitted by the information which he had obtained from the plaintiff's history of the case, a physical examination, and the expert's own qualifications. A basis for further opinion evidence by the expert should have been, but was not, supplied. Although it had been seven months since the physician had seen the plaintiff professionally, there was not any testimony whatsoever to show the mental and physical condition of the plaintiff at any time during this period or at the trial. The best evidence of what had been the experience and the past and present physical and mental state of the plaintiff was his own testimony, and that of others who could speak from personal observation and knowledge. If such testimony had been furnished, it would then have been the province of the expert to express his opinion as to whether or not these mental and physical conditions were the direct or consequential result of the injury received, and whether their duration would be temporary or permanent. In the case at bar, the expert could have had no knowledge of the mental and physical condition of the plaintiff between February and August. To ask him what would have been, in his opinion, the mental

and physical condition of the plaintiff during this period and in the future, as the probable result of the conditions the expert observed in February, is to substitute an opinion of all that might probably happen, without reference to whether or not it had happened, for the facts with relation to what had actually happened from an authoritative, procurable, and original source. *Sutherland on Damages* (4th Ed.), secs. 121, 123, 441.

2. The plaintiff offered a prayer instructing the jury on the measure of damages. Although the language of the prayer did not mention specifically permanent injuries, it was broad enough to embrace both temporary and permanent injuries. The defendants attempted to restrict the scope of the plaintiff's prayer by submitting a prayer to the effect that there was no legally sufficient evidence from which the jury could allow any damages for injuries of a permanent nature. The court granted the plaintiff's prayer and rejected this prayer of the defendants. The second exception is to the rulings of the court on these two prayers. A careful examination of all the testimony not only fails to disclose any evidence of permanent injury resulting from the accident, but affirmatively establishes that the injuries received are temporary. Counsel for the plaintiff stated to the court during the trial that the plaintiff was not claiming any permanent injury, but the declaration, which the jury took with them into the jury room, counted on permanent damages, and the plaintiff's prayer permitted a recovery for such damages. In failing to grant the second prayer of the defendants, or so to modify the plaintiff's first prayer as to exclude damages for permanent injury, there was reversible error, because the jury was permitted to find damages for a permanent injury when none had been inflicted.

3. The third exception is to the dismissal of motion of the defendants for a new trial. The general rule is that the disposition of a motion for a new trial is within the sound discretion of the trial court, and is not the subject of appeal. *Wash., B. & A. R. Co. v. Kimmey,* 141 Md. 243, 118 A. 648;

*Pugaczewska v. Maszko*, 163 Md. 360, 163 A. 205. The trial court heard and considered the motion, affidavit, and exhibit, which embraced everything in support of the application, and came to the conclusion that there was no sufficient cause shown. In thus hearing, considering and determining the propriety of a new trial on the motion and the evidence, the court was in the proper exercise of its discretion, and there is no appeal to this court from its conclusion thus made.

Because of the errors indicated in its rulings on the evidence and the prayers, the judgment will be reversed.

> *Judgment reversed, with costs to the appellant, and case remanded for a new trial.*