## BENDER *v.* POPP

[No. 160, September Term, 1966.]

 

 

 

 

*Decided March 14, 1967.*

The cause was argued before HAMMOND, C. J., and MAR-
BURY, OPPENHEIMER, McWILLIAMS and FINAN, JJ.

*Bayard Z. Hochberg* and *Daniel A. Bronstein,* with whom was *Paul Berman* on the brief, for appellant.

*Samuel S. Smalkin,* with whom were *Rollins, Smalkin, Weston & Andrew, Hyman Ginsberg* and *Ginsberg & Ginsberg* on the brief, for appellee.

FINAN, J., delivered the opinion of the Court.

The plaintiff appeals from a judgment of $2,800, rendered on the verdict of a jury in a suit brought against the defendant to recover compensation for personal injuries sustained and property damage incurred, resulting from a collision wherein the automobile operated by the defendant struck the rear of the plaintiff's vehicle while she was stopped in a line of traffic traveling east on the Baltimore Beltway on January 26, 1963, in the middle of a snow storm. The defendant has not filed a cross-appeal, consequently, the question of liability is not at issue. However, since the plaintiff's main contention on appeal is the question of the lower court's instructions on damages, it is incumbent upon the Court to set forth in some detail the facts bearing on this facet of the case.

At the time of the collision, the plaintiff was a 39-year old married woman and the mother of two children, who was employed by the Baltimore County Board of Education as a secretary. During the summer of 1964, she was promoted to the position of bookkeeper. On May 20, 1965, at which time she was earning $325 per month, she tendered a letter of resignation, the pertinent part of which reads as follows:

"May 20, 1965

"Mr. Robert C. Coleman, Jr.
Assistant in Personnel
Board of Education
Aigburth Manor
Towson, Maryland 21204

Dear Mr. Coleman:

After a good deal of thought I have decided to go into temporary retirement. The effective date of my

resignation will be July 31, if this date is satisfactory to you.

I regret having to leave the Board of Education, for my work with Overlea Senior High School has been enjoyable. I appreciate the fine treatment I have received from the Board, * * *.

Very truly yours,<br>/s/ Nancy G. Bender"

The letter contains no reference to her physical condition, although in her testimony she assigned as the reason for the termination of her employment the pain and inconvenience occasioned by the neck injury she received in the accident of January 26, 1963, stating that she was "exhausted all the time from the pain and very upset most of the time."

The evidence showed that on the day following the accident she consulted a Dr. Amoroso and upon his advice confined herself to bed where she remained for a week. At this time she complained that her neck and shoulder muscles pained and ached. Dr. Amoroso treated her for about a month, after which time he referred her to Dr. Horton, an orthopedist, under whose care she remained until October of 1965. Dr. Horton restricted her activities for three more weeks, especially that of bending, lifting, and excessive driving. The plaintiff has had therapy treatments "on and off" during the years following the collision. She complains of headaches, limitation of flexion of her neck, which in turn interferes with her household chores and did interfere with her work. Dr. Horton testified that the plaintiff sustained "a minimal degree of permanent partial disability of the neck that might amount to perhaps five to ten percent permanent partial disability." When queried about how this disability might in the future affect her employment as a bookkeeper, Dr. Horton testified: "I doubt with the same slant on the table. Without this acute flexion, I don't think she will have any trouble." Dr. Horton also testified that "she may continue to have intermittent mild complaints referable to the neck in the way of occasional headaches, * * *."

Dr. Aronson, called as a medical witness by the defendant, testified that the plaintiff had, as a result of the accident on

January 26, 1963, sustained permanent injuries, but he did not testify as to their nature and extent.

At the time of the trial of the case, March 31, 1966, the plaintiff was not working and had not been since her resignation in July of 1965, nor was there any evidence indicating that she endeavored to go back to work, or contemplated returning to work, in the near future. At the time of the trial of the case, her husband had a position as supervisor with the Western Electric Company.

The plaintiff, obviously dissatisfied with the amount of damages awarded by the jury, raises the following question on appeal:

1. Did the trial court err in its instructions to the jury on the issue of damages; the court refusing to grant any instructions regarding the effect of the injury on the plaintiff's future earning capacity?

2. Did the trial court err in refusing to ask the plaintiff's requested *voir dire* question No. 4 of the jury panel. "Is any prospective juror a stockholder, bondholder or employee of any casualty insurance company?"

3. Did the lower court commit reversible error in not permitting the plaintiff to give an opinion as to her ability and capacity to return to work?

4. Did the lower court commit reversible error in refusing to permit the plaintiff's husband to give an opinion as to the plaintiff's present condition of health, and as to changes in the condition of her health?

I

The learned judge in the court below, after fully covering the law of negligence and contributory negligence, instructed the jury with regard to damages as follows:

> "In the event that you find that the plaintiff, Mrs. Bender has failed to meet such burden as to any element of damage asserted by her, then you will disregard such element of damage in arriving at your verdict. Again, if you find a verdict for the plaintiff, Mrs. Bender, then, in estimating the damage, you are instructed that you will consider first her health and con-

dition before the injury complained of as compared with her condition as a consequence of such injuries, including all aggravations of any pre-existing condition, or infirmity of her neck. Second, whether the injuries are, in their nature, permanent; *thirdly, how far her injuries are calculated to disable the plaintiff from engaging in those housewife duties for which, in the absence of such injuries, the plaintiff would have been qualified.* The physical pain and mental anguish, if any, which the plaintiff has suffered in the past or is likely to suffer in the future as a result of her injuries including the intensity of her pain and mental anguish, if any, and the period of time, past and future, that the plaintiff has been or is likely to be so affected. Thirdly, (sic) such sums as the jury may find to be the reasonable value of any medical treatment which has been required for the Plaintiff in consequence of such injuries.

"After consideration of each of the above elements, you will allow Mrs. Bender such sum as in your judgment will be fair and just compensation for her injuries and damages, which are attributable to the collision. * * *." (Emphasis supplied.)

The plaintiff excepted to the above instructions on damages because they did not include the italicized words contained in the plaintiff's following proposed instruction.

"(3) How far her injuries are calculated to disable the plaintiff from engaging in those *business or industrial pursuits or employments and* housewifely duties for which, in the absence of such injuries, the plaintiff would have been qualified."

The plaintiff also excepted to the court's instruction on damages because the following instruction requested by her was refused:

"(7) Any loss of the plaintiff's earning capacity in the future as the natural and proximate result of such injuries, if any the jury so finds."

We cannot agree with the lower court's rationale support-
ing its refusal to grant these instructions. Its rationale is ex-
pressed in the colloquy which transpired between the court
and the plaintiff's counsel:

> MR. BERMAN: I want the record to show that
> you are instructing me that I cannot argue loss of earn-
> ing capacity based on the testimony in this case. In
> view of your Honor's instruction not to do so, I am not
> going to do it, but I want to except to that part.
> THE COURT: That is my instructions. The rea-
> son it is given, in my opinion, is because the plain-
> tiff's one doctor, Dr. Horton, that there had been no
> demonstration of any loss of earning capacity.
> MR. BERMAN: I think the permanent disability to
> her neck, the jury could find, based on the evidence,
> some loss of earning capacity. * * *.

There was medical evidence in the record, as well as the plain-
tiff's testimony, describing her subjective complaints as to the
exhaustion, pain, headaches and limitation of the motion of
her neck, all of which presented facts from which a reasonable
inference could have been drawn that her range of job oppor-
tunities and earning capacity would be affected by the injury.

The defendant's medical witness, Dr. Aronson, testified that
the plaintiff had sustained permanent injuries as a result of
the accident. The plaintiff's medical witness, Dr. Horton, testi-
fied that the plaintiff had sustained a permanent injury which he
stated "might" be a five to ten percent permanent partial disabil-
ity to her neck. Dr. Horton's mitigating statement, from which
the defendant derives so much sustenance, was his reply to the
question as to whether or not the plaintiff's injury would limit
her activities in connection with her job as a bookkeeper, to which
he answered: "I doubt with the same slant on the table. With-
out this acute flexion, I don't think she will have any trouble."
The doctor's answer was subjunctive.

This Court feels that the undisputed evidence of a perma-
nent injury, even though close to minimal limits, renders the
question of its effect on future earning capacity and job oppor-
tunities a matter within the purview of the jury. It presents a

legitimate issue, the effect of which on the question of damages is fair game for both adversaries to argue to the trier of fact.

In *Ihrie v. Anthony,* 205 Md. 296, 107 A. 2d 104 (1954), the Court had before it a case wherein the plaintiff received a whiplash injury in an automobile collision. Several years before the accident, she had been employed as a clerk in an office and she was not working at the time of the accident. However, after the accident, she tried to work as a door-to-door canvasser for a real estate firm, "but found that she could not stand it and gave it up after about two days." There was medical testimony by several doctors that the plaintiff could do clerical work if she could sit upright. There was also some question as to how much bending over she would have had to do in the course of such work. Chief Judge Brune, speaking for the Court, said at pp. 305-07:

> "The fact that the plaintiff was unemployed at the time of the accident and for several years prior thereto is not fatal to her right to recover. * * *.
>
> * * *
>
> "Much of the appellants' attack on this phase of the instructions [damages] of the trial court seems to stem from medical testimony to the effect that the plaintiff could do clerical work and from the argument that since this was the only type of work in which she was experienced, she really has suffered no loss at all. * * *.
>
> "We are of the opinion that there was sufficient evidence of the permanence of the plaintiff's injuries and of their impairing her earning power to warrant the submission of those issues to the jury and that there was sufficient evidence to serve the jury as a guide in measuring the extent of her loss of earnings."

In *Adams v. Benson,* 208 Md. 261, 117 A. 2d 881 (1955), this Court was presented with a case where a domestic had sustained a hand injury which gave her pain when she flexed her wrist. The defendant took exception to the lower court's instructions on the impairment of her future earning capacity as

an element of damages to be considered by the jury, on the grounds that there was no evidence that the plaintiff was unable to work as a domestic servant after the accident, and that there was no certainty as to future loss of earnings. The Court stated at pp. 272-73:

> "The determination of the extent of impairment of earning power as a result of injury, although involving contingencies and matters of opinion, is an ordinary function of the triers of fact. In many cases evidence of salary, wages, or other income derived from personal services, earned by a plaintiff before and after sustaining an injury, is available for the purpose of comparison in proof of diminished earning power; *but such a comparison is not essential to proof of diminished earning power, but all relevant facts must be considered.*" (Emphasis supplied.)

We are of the opinion that in the case before us, in view of the medical evidence of the permanent nature of the injury affecting the motion of the plaintiff's neck, and plaintiff's testimony describing her subjective complaints, separate and apart from her opinion as to her general health, which matters of opinion were properly excluded, the lower court erred in not granting the plaintiff's requested instructions regarding the impairment of her future earning capacity as an element of damages to be considered by the jury.

## II, III and IV

Since we are reversing the judgment of the lower court, it is not necessary for us to reach the remaining issues raised by the plaintiff on this appeal or discuss them in detail. However, for future guide lines in the trial of this matter, we do not feel that the remaining assignments of error are meritorious. The lower court committed no prejudicial error in refusing the plaintiff's requested question No. 4 on the *voir dire* of the jury, or in sustaining the defendant's objections to the testimony of the plaintiff as to her own opinion regarding her ability to return to work, or in the exclusion of the testimony of the husband as to his opinion of his wife's present condition of health and changes in her health.

74

For the reasons stated herein, the judgment of the lower court is reversed and remanded for a new trial on the issue of damages alone.

*Judgment reversed, case remanded for new trial with instructions, appellee to pay the costs.*