WILLIAM JOHNSON-BEY *v.* JOSEPH P. REIGER,
PERSONAL REPRESENTATIVE OF THE ESTATE
OF WINSLOW ROLLINS

[No. 742, September Term, 1975.]

*Decided July 23, 1976.*

The cause was argued before MORTON, ■ GILBERT and MOORE, JJ.

*Leonard A. Orman* for appellant.

*Francis X. Gallagher* for appellee.

MORTON, J., delivered the opinion of the Court.

Plaintiffs, William Johnson-Bey and Jacqueline McBride, brought suit in the Superior Court of Baltimore City (Sodaro, J., presiding) to recover compensation for injuries resulting from an automobile accident. Judge Sodaro directed a verdict in favor of the plaintiffs on the issue of liability. The jury awarded damages in the amount of $500 to Ms. McBride and $1,500 to Mr. Johnson-Bey. Only Mr. Johnson-Bey has appealed.

The record indicates that in October, 1970, the appellant sustained injuries as the result of an automobile collison caused by the negligence of the late Winslow Rollins, whose estate is represented by the appellee. Following the accident, the appellant was taken to a hospital where he was examined, given medication for pain and released. Two days later, he visited his family physician, Dr. Edward Holt, since the pain caused by his injuries seemed to be worsening. He remained under Dr. Holt's care for approximately a year and a half, during which time he was also examined by an orthopedic surgeon to whom Dr. Holt had referred him. In the course of the appellant's medical treatment, he was given heat treatments, medication, exercises, a neck collar and a back brace. At the trial, the appellant testified that his lower back continued to hurt and that he still wore a back brace occasionally and took aspirin to relieve the pain.

Dr. Holt testified that in his opinion the appellant's injuries from the accident consisted of neck strain, low back strain and head and abdomen traumatic injury. When he released the appellant from his care in April, 1972, he

diagnosed the appellant as having a permanently disabled lower back, all other complaints having disappeared.

At the time of the accident, the appellant was employed by the Social Security Administration as an "assembly and file clerk," a position which required bending and lifting. After the accident, he continued to work at the Social Security Administration but was given a desk job which did not require any bending or lifting. At the time of the trial, he remained employed at this desk job. He testified that because of the accident, he was absent from work for a total of 671 hours. Despite the fact that he no longer has to do any lifting or bending, he testified that his back continues to ache when he remains in the same position for any length of time and when the weather is inclement.

His salary at the time of the accident in October, 1970, was $109 per week. At the time of trial, four and one half years later, his salary was $162 per week.

In June, 1973, the appellant was involved in another automobile accident in which his back was injured and for which he was hospitalized twelve days. When the appellant was asked at the trial "whether the condition that he had before the '73 accident * * * was the same condition he is now suffering from?," he responded: "I have the same pain, really." During cross-examination when asked whether he knew which accident had caused the pain in his lower back, he answered: "No. I just know I have pain."

The appellant testified that he was treated by different doctors for the injuries he received in the 1973 accident. Although Dr. Holt testified that he diagnosed the appellant's disability as permanent sometime in the spring of 1972, he also testified that he was unaware of the fact that the appellant had been involved in a second automobile accident in 1973.

It is in this factual posture the appellant contends that the trial court committed reversible error by refusing to instruct the jury that, in their determination of damages, they should consider the appellant's "future loss of earning capacity" he "may suffer as a result of his injuries."

With respect to the appellant's request for an instruction concerning future loss of earning capacity, the trial judge instructed the jury:

> "You may also take into account his lost wages as a direct and proximate cause of this accident of 1970, and no other cause, and in this situation there is no evidence of any future lost wages. * * * ·
>
> The testimony is there is no evidence of any future lost wages or future medical expenses in this case * * *."

From our review of the record we think the trial judge made a proper observation to the jury that "there is no evidence of any future lost wages." The only testimony remotely relating to future loss of earnings was that of appellant's family physician who "felt * * * the injury to his [appellant's] back was of a permanent nature." The orthopedic physician who examined him did not testify. The family physician received a report from the orthopedist in November, 1971, which apparently stated that appellant was "asymptomatic except for some periodic discomfort in the back * * *." When asked what the term asymptomatic meant, the family physician stated: "It means he has no more problems, no more complaints. He is well, in other words." The only other testimony was that of the appellant who stated that he had "trouble in my back" if "I sat in a position for too long"; or in "bad weather"; or when under "a lot of tension."

Appellant places great reliance upon the decisions of the Court of Appeals in *Adams v. Benson,* 208 Md. 261 (1955) and *Bender v. Popp,* 246 Md. 65 (1967). We think the specificity of the medical evidence in each of those cases was so substantially greater than the evidence set forth in the record before us that the holdings therein are not controlling here.

In *Adams v. Benson, supra,* the Court re-articulated the following rule, at 270-71:

> "We reaffirm the rule stated in *Mt. Royal Cab Co.*

*v. Dolan,* 166 Md. 581, 171 A. 854, that in an action for personal injuries caused by the negligence of the defendant, the plaintiff may recover not only for the consequences which have actually and naturally resulted from the tort, but also for those which may certainly or reasonably and probably result therefrom as proximate consequences, *but not for consequences which are speculative or conjectural.* [Emphasis supplied.]

There, the young woman plaintiff had been awarded damages in the lower court for injuries she received to her hand which she accidentally plunged into an unguarded electric fan while present in a tavern as a patron. After testifying to the excruciating pain she suffered for several months after the accident, she stated: " 'My hand is awfully sensitive and weak. I can't grip things very long and I can't make a tight grip. I have continuous pains.' " There was medical testimony that the plaintiff was unable to make a complete dorsal flexing of the wrist; that her disability was ten percent; and that the painful condition of the hand was "probably permanent." There was also evidence that when she returned to the cannery where she worked as a tomato slicer, the salary she had received prior to the accident was substantially diminished as a result of her injuries. In approving an instruction to the jury that the plaintiff was entitled to recover damages for "loss of future earnings," the court pointed to the rule that loss of future earnings may be considered "if shown with reasonable certainty and not merely speculative in character." It found that the evidence there was sufficiently detailed, certain and non-speculative to meet the test.

*Bender v. Popp, supra,* involved an appeal by a plaintiff from a jury verdict awarding her $2,800 for injuries she received in an automobile accident. She contended on appeal that the trial judge erred in refusing to instruct the jury that, in determining damages, they should consider "How far her injuries are calculated to disable the plaintiff from engaging in those *business or industrial pursuits or employments* and housewifely duties for which, in the

absence of such injuries, the plaintiff would have been qualified." The late Judge Thomas B. Finan, who authored the Court's opinion, found, at 71:

> "There was medical evidence in the record, as well as the plaintiff's testimony, describing her subjective complaints'as to the exhaustion, pain, headaches and limitation of the motion of her neck, all of which presented facts from which a reasonable inference could have been drawn that her range of job opportunities and earning capacity would be affected by the injury.
>
> The defendant's medical witness, Dr. Aronson, testified that the plaintiff had sustained permanent injuries as a result of the accident. The plaintiff's medical witness, Dr. Horton, testified that the plaintiff had sustained a permanent injury which he stated 'might' be a five to ten percent permanent partial disability to her neck."

Judge Finan then announced, at 71-72:

> "This Court feels that the undisputed evidence of a permanent injury, even though close to minimal limits, renders the question of its effect on future earning capacity and job opportunities a matter within the purview of the jury. It presents a legitimate issue, the effect of which on the question of damages is fair game for both adversaries to argue to the trier of fact."

While we are of the opinion that the evidence of appellant's "future loss of earnings" resulting from his injuries was simply "speculative or conjectural" (*Adams v. Benson, supra*) and did not meet the "minimal limits" delineated in *Bender v. Popp, supra*, there is an additional factor present in this case which factually distinguishes it from *Adams* and *Bender*.

Here, the evidence shows that the plaintiff was involved in an automobile accident subsequent to the accident upon which the present action is based. His injuries in the second

accident also involved his back, as a result of which he was hospitalized for twelve days. On the other hand, after the first accident he was released from the hospital immediately upon his initial examination. At the trial, appellant was able to say only that his back hurt the same after the second accident as it did after the first. He could not say which accident actually caused the condition from which he was presently suffering. His attending physicians in the second accident did not include his family physician who treated him for injuries received in the first accident. There was no evidence to indicate what bearing the injuries sustained in the second accident had upon his present condition. Although his family physician indicated at the trial that he had formed his opinion that appellant suffered a permanent disability from the accident prior to the occurrence of the second accident, he was not even aware that appellant had sustained injuries in the second accident.

Additionally, there was no evidence to demonstrate the locale or section of that part of the appellant's lower back which was painful or to what extent the pains would interfere with or cause him to sustain a loss of future earnings. In short, there was a failure to produce evidence from which the jury could make a reasoned calculation of the effect the occasional pain would have upon appellant's ability to earn a living in the future. Moreover, there was no evidence upon which the jury could segregate the effects of the injuries sustained in the second accident from those of the first. The jury might speculate, conjecture, or guess the result, but this is not a permissible method of assessing damages.

The appellant also contends that the trial judge improperly refused to grant his requested instruction concerning his loss of earning capacity "from the date of the accident to the date of trial." The judge instructed the jury:

> "* * * you may take into account and consider also all medical expenses and hospital expenses, and additional lost wages and other out-of-pocket expenses which you may find were incurred as a direct and proximate cause of this accident, and for

no other causes. In addition thereto, Mr. Johnson-Bey is entitled under the law to be compensated for all time lost from work which you may find was a direct and proximate cause of the injuries of the 1970 accident, and that the defendant cannot reduce the damages if you feel he is entitled to it by the fact that some of the plaintiff's lost wages were covered by sick time, and vacation time, which were due to him in any event as compensation for his employment."

We believe that a fair reading of this charge adequately expresses the thought embodied in the appellant's requested instruction. The trial judge is not required to accept a requested instruction but may substitute one of his own. Maryland Rule 554 b. 1.

The appellee's motion to dismiss the appeal on the ground that the appeal was from the order nisi rather than the formal judgment is denied. It is true that appellant noted an appeal "from the judgment entered in this action on May 14, 1975," which was improper since the judgment absolute was not entered until May 22, 1975, after appellant's motion for a new trial had been denied. The order of appeal, however, was entered on June 18, 1975, after the judgment absolute had been entered and within thirty days thereof. The reference to the May 14, 1975, judgment was merely surplusage and did not alter the effectiveness of the appeal. *Shipp v. Autoville Ltd.*, 23 Md. App. 555, 559 (1974).

> *Motion to dismiss denied; judgment affirmed; costs to be paid by appellant.*