## ADAMS ET AL. *v.* BENSON

[No. 5, October Term, 1955.]

262

*Decided November 11, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Wilbur D. Preston, Jr.,* with whom were *John Grason Turnbull* and *Due, Nickerson, Whiteford & Taylor* on the brief, for the appellants.

*W. Lee Harrison* and *Amos I. Meyers,* with whom were *Douglas G. Bottom* and *Richard C. Murray* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This action in tort was instituted in the Circuit Court for Baltimore County by Ida Benson against Irvin Adams

and William D. Adams, proprietors of Adams Inn, a tavern at Turner Station, to recover for personal injuries sustained when her right hand was lacerated by an unguarded electric intake fan in the tavern.

The accident occurred on May 18, 1952, near midnight. Plaintiff, who was 25 years old, had just walked through the hall from the cocktail lounge to the door of the ladies' room and was about to enter the room, when the door was opened by a patron coming out. As she jumped back to avoid being hit by the door, her hand was struck and lacerated by the unguarded fan on the wall to the right of the door. She was taken to a hospital, where the lacerations were cleaned and sutured.

Two days later plaintiff, her hand swollen and painful, consulted her physician, Dr. William Wade. She testified that for a month after the accident she visited Dr. Wade twice a day, and for a month thereafter she visited him several times a week. At the trial of the case over two years later she testified about her suffering as follows:

"During those two months that I was going to Dr. Wade, my hand was giving me plenty of trouble. I had terrible pains all the time, and for about a month and a half my hand was still infected. He had to open those cuts up every time I would go to him, and he would wash them out. At night the pains would wake me up in my sleep, and I would cry, and get up and walk. They continued for two months after my hand was cut. * * * My hand is awfully sensitive and weak. I can't grip things very long and I can't make a tight grip. I have continuous pains. Sometimes they are throbbing and sometimes they are sharp pains."

Dr. Wade was summoned as a witness but he did not appear. However, Dr. Eugene S. Bereston, of Baltimore, a practicing physician specializing in dermatology, testified for plaintiff. Dr. Bereston had examined her hand at three different times, in December, 1952, November,

1953, and February, 1954. He testified that he found disfiguring keloidal scars on the dorsum of her right hand, which gave her pain whenever she flexed her wrist. He explained that some people, especially those, like plaintiff, of the Negro race, after the healing of an injury are left with raised keloidal scars, which remain very tender and sensitive and never disappear.

Following instructions by the trial judge as to the law of negligence and the measure of damages, the jury rendered a verdict in favor of plaintiff for $7,500. Defendants appealed here from the judgment entered upon that verdict.

## I.

The main contention of defendants was that the judge erred in permitting Dr. Bereston (1) to testify to plaintiff's statement that she suffered pain when she flexed her wrist, and (2) to express his opinion as to the extent of her disability. It was stressed that Dr. Bereston did not make the first examination until more than seven months after the accident, by which time the lacerations had healed, and that he never gave her any treatment. It was then argued that, since Dr. Bereston had examined her hand solely in order to testify, the statement that she had pain in her hand was not admissible under the exception to the hearsay rule for statements of bodily condition. Defendants also objected to Dr. Bereston's opinion, since it was based in part upon the statement objected to.

It was stated by this Court, in the opinion delivered by Judge Pearce in 1902 in the case of *Sellman v. Wheeler*, 95 Md. 751, 54 A. 512, 514, that an attending physician may testify not only to facts observed about the condition of an injured patient but also to statements made by the patient about his symptoms and feelings during examinations made with a view to treatment. This is in accord with the general rule in this country. It is recognized that when a physician examines a patient in order to diagnose an injury and prescribe treatment, his

professional opinions must ordinarily be based in part upon the patient's statements.

However, many of the courts in the United States have drawn a distinction, in so far as the admissibility of evidence is concerned, between physicians consulted for treatment and doctors employed solely for the purpose of qualifying as witnesses. The majority of the American courts have held that descriptive statements of present pain or symptoms made to a doctor employed only to testify do not qualify for admission as substantive evidence under the exception to the hearsay rule for statements of bodily condition. *Chesapeake & Ohio Ry. Co. v. Wiley,* 134 Ky. 461, 121 S. W. 402; *Preveden v. Metropolitan Life Insurance Co.,* 200 Minn. 523, 274 N. W. 685; *Pierce v. Heusinkveld,* 234 Iowa 1348, 14 N. W. 2d 275, 281; *United States v. Nickle,* 8 Cir., 60 F. 2d 372; *Nashville, Chattanooga & St. Louis Ry. Co. v. York,* 6 Cir., 127 F. 2d 606, 611; 6 *Wigmore on Evidence,* 3d Ed., sec. 1721.

On the other hand, some courts have adopted the rule that expert witnesses may testify to the information upon which they have relied in reaching their conclusions, and this practice permits a medical doctor to give a general account not only of the facts observed but also of the history of the case, including the patient's statements as to injury, past symptoms, and present feelings at the time of the examination. These courts have explained that the patient's statements, when presented for this purpose, are considered, not as evidence of the matters stated, and hence not hearsay, but merely as the grounds and reasons for the opinion to be given in evidence by the witness. *Cronin v. Fitchburg & Leominster Street Ry. Co.,* 181 Mass. 202, 63 N. E. 335; *Groat v. Walkup Drayage & Warehouse Co.,* 14 Cal. App. 2d 350, 58 P. 2d 200; *Estes v. Babcock,* 119 Wash. 270, 205 P. 12; *Kraettli v. North Coast Transportation Co.,* 166 Wash. 186, 6 P. 2d 609, 80 A. L. R. 1520; *Kansas City, Ft. Scott & Memphis R. Co. v. Stoner,* 8 Cir., 51 F. 649.

While many of the courts, in accepting the history of a case as the basis for an expert opinion, make no distinction between an attending physician and a doctor who examined the patient only for the purpose of preparing to testify as an expert, there are other courts which have held that such an expert may not recount what the patient has told him, even for the non-hearsay purpose of explaining the grounds of the opinion. It has been pointed out by these courts that when a patient is attended by a physician for the purpose of treatment, there is a strong inducement for the patient to speak truly of his suffering, but that it may be otherwise when he is examined for the purpose of creating evidence in his own behalf. *Davidson v. Cornell,* 132 N. Y. 228, 30 N. E. 573, 576. See 3 *Wigmore on Evidence,* 3d Ed., sec. 688; *McCormick on Evidence,* sec. 267.

The question came before this Court in 1944 in *Yellow Cab Co. v. Henderson,* 183 Md. 546, 39 A. 2d 546, 175 A. L. R. 267. In that case, where a three-year-old child was injured, the Court recognized that there was a difference of opinion in this country on whether the opinion of a doctor as to the condition of an injured litigant, based wholly or in part upon the history of the case, as told by the litigant on a personal examination, is admissible where the examination was made solely for the purpose of qualifying the doctor to testify as a medical expert. But Judge Bailey, speaking for the Court, made it plain that the doctor in that case was the little child's attending physician, and therefore his opinion that the child's physical condition was the result of injury and shock occasioned by a collision was admissible, even though his opinion was based in part upon information received from the child's mother, who was the nurse.

The question again arose in 1947 in *Parker v. State,* 189 Md. 244, 55 A. 2d 784. In that case the appellant was charged with bastardy. On the day of the trial the appellant was given a sterilization examination by a doctor. At that time the doctor obtained the full case history

from the appellant. The Circuit Court for Wicomico County excluded the doctor's opinion based upon the case history. The Court of Appeals, in the opinion by Judge Markell, held that this part of the doctor's opinion was properly excluded because the doctor examined the appellant, not for the purpose of giving treatment, but merely to qualify as a medical expert.

This decision has never been overruled. As recently as 1950 the question was considered in *Francies v. Debaugh,* 194 Md. 448, 457, 71 A. 2d 455. There the appellant objected to the testimony of a physician that the appellee had told him of a fracture of five ribs. The physician had seen the appellee only once and then only for examination and not for treatment. This Court, in the opinion by Judge Collins, ruled that, even if there was error in allowing the physician to testify as to the complaint of the fracture of ribs, such error did not prejudice the appellant, inasmuch as the physician later testified without objection that his X-ray picture showed the fractures of the ribs, and that the presence of the fractures was sufficient reason for the appellee's complaint of discomfort in the chest.

In the instant case we find no prejudice. In the interest of orderly administration of justice and for the avoidance of useless expense to litigants, it is the policy of this Court not to reverse a judgment for harmless error, and thus in every case the appellant has the burden of showing prejudice as well as error. *Baltimore Transit Co. v. State, for Use of Castranda,* 194 Md. 421, 439, 71 A. 2d 442, 449. In the case at bar no prejudice was caused defendant when the trial judge admitted the testimony complained of, because Dr. Bereston testified that plaintiff winced when she flexed her wrist, and that it was obvious to him that she was very uncomfortable when she did so. Moreover, when plaintiff was on the stand she testified about the pain which she suffered when she flexed her wrist, and her statement was subject to cross-examination. Her testimony about her pain was not

substantially different from the doctor's testimony.

## II.

Defendants contended that the trial judge erred in permitting Dr. Bereston to state what his charge was for his examinations and appearance in court. The statement to which defendants objected was: "The total bill, including appearance today, would be sixty dollars."

It must be conceded that a fee paid to a witness to compensate him for coming to court to testify is not a part of the damages ensuing from a tort. But Dr. Bereston explained that his bill for $60 was the usual charge for consultation and appearance in court to testify. We do not think this testimony was prejudicial to defendants. The judge, in instructing the jury on the measure of damages, charged them that they were to consider only the expenses incurred by plaintiff "in consequence of her injuries." The judge made no reference to Dr. Bereston's bill. It is obvious that the bill for $60 did not have any substantial bearing on the jury's verdict for $7,500. Moreover, it is evident that defendants did not consider that the testimony as to the amount of the bill was important, as they did not ask the judge to instruct the jury to disregard the statement in considering their verdict.

## III.

Defendants took exception to the judge's instructions that the jury could consider (1) how far plaintiff's injuries might disable her in her employment; and (2) any loss of earnings which she has sustained and might sustain as a result of her injury. They argued that there was no evidence that plaintiff was unable to work as a domestic servant after the accident, and that there was no certainty of future loss of earnings.

We reaffirm the rule stated in *Mt. Royal Cab Co. v. Dolan,* 166 Md. 581, 171 A. 854, that in an action for personal injuries caused by the negligence of the defendant, the plaintiff may recover not only for the consequences which have actually and naturally resulted from the tort,

but also for those which may certainly or reasonably and probably result therefrom as proximate consequences, but not for consequences which are speculative or conjectural.

In an action for personal injury, the jury, in estimating damages, should consider the health and condition of the plaintiff before the alleged injury as compared with his health and condition consequent upon the injury; whether the injury is in its nature permanent and how far it is calculated to disable the plaintiff from engaging in those mechanical employments and pursuits for which he would have been qualified in the absence of the injury; and also the physical and mental suffering to which he was subjected by reason of the injury; and then allow such damages as in their opinion would be a fair and just compensation for the injury. *Bannon v. Baltimore & Ohio R. Co.*, 24 Md. 108, 116, 125; *McMahon v. Northern Central Ry. Co.*, 39 Md. 438, 441, 453.

It is accordingly clear that if the jury believed that plaintiff's hand was permanently injured as a result of the negligence of defendants, she was entitled to recover damages for (1) resulting loss of time and loss of earnings, (2) loss or diminution of earning capacity sustained by being temporarily deprived of her capacity to perform her ordinary labor, and (3) loss of future earnings, if shown with reasonable certainty and not merely speculative in character. The jury were entitled to consider plaintiff's earning capacity before the injury, the probable duration of such capacity, and how far the injury would probably disable her from engaging in those occupations for which she would have been qualified in the absence of the injury.

At the trial of this case the dermatologist testified that, since plaintiff was unable to make a complete dorsal flexion of her wrist, he estimated the disability at 10 per cent. He also expressed the opinion that the painful condition is "probably permanent." He then amplified his opinion as follows:

"The scars themselves are permanent, and usually when a keloid is formed it is permanent. * * * There are some ways of treating keloids, which might possibly relieve them to some degree. There is treatment that might relieve this condition somewhat. * * * There are a number of types. One type is to surgically remove them and then follow this up with X-ray therapy to this area. Another method of treatment is hyaluronidase. Both treatments will alleviate the keloids and reduce them somewhat. People having this tendency have a tendency to produce further keloids. If you cut out an existing keloid, you may reduce it. They are permanent if left alone. There would be some degree of permanency if left alone. * * * In other words, you can't predict with every individual just how they will turn out, particularly individuals of the colored race, because when a person has a tendency, you may cut these out and still get other keloids in their place. Some people are benefited by this treatment. It may be modified by treatment."

Plaintiff testified that she returned to the plant of the Gibbs Packing Company, where she had been skinning tomatoes prior to the accident, but that she could not skin tomatoes after suffering her injury. Plaintiff offered to show what she had earned prior to the accident, and she also testified that her salary thereafter at the plant was diminished, so that she was paid less than $30 per week.

The determination of the extent of impairment of earning power as a result of injury, although involving contingencies and matters of opinion, is an ordinary function of the triers of fact. In many cases evidence of salary, wages, or other income derived from personal services, earned by a plaintiff before and after sustaining an injury, is available for the purpose of comparison

in proof of diminished earning power; but such a comparison is not essential to proof of diminished earning power, but all relevant facts must be considered. *Cross v. Sharaffa*, 281 Mass. 329, 183 N. E. 838. For these reasons we conclude that there was no error in the judge's instructions.

Finding no prejudicial error in the rulings and instructions of the trial judge, we will affirm the judgment entered in favor of plaintiff.

*Judgment affirmed, with costs.*